STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant, *v.* LARRY J. CHILDERS *et al.*, Defendants-Appellees.

Fifth District No. 76-254

Opinion filed July 7, 1977.

Mitchell and Schoen, of Carbondale, for appellant.

Harris and Lambert, of Marion, for appellee Larry J. Childers.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff-appellant, State Farm Mutual Automobile Insurance Company (hereinafter State Farm), appeals from a declaratory judgment rendered against it in the circuit court of Jackson County finding that with respect to a motorcycle-automobile accident described herein defendant Laurie Larsen was covered by a policy of automobile liability insurance issued by State Farm to Laurie and George Larsen.

A default had been entered against all of the named defendants except for Larry Joe Childers and Universal Underwriters Insurance Company prior to the entry of the instant judgment. Defendant Childers is the only defendant involved in this appeal.

The issue presented to this court is whether the term "non-owned automobile" as defined in the instant liability insurance policy should be construed to include a motorcycle. The trial court, in a letter memorandum in support of its opinion, indicated that such an interpretation was proper because: (1) the "loose language" of the policy, although not amounting to conflicting clauses, could lead an insured to

believe that his policy covered him while driving any kind of licensed motor vehicle; and (2) a literal application of the terms of coverage would be inconsistent with the intent of the legislature with respect to the Illinois Financial Responsibility Law.

State Farm contends that the terms of the policy should be given their plain and ordinary meaning because the policy clearly and unambiguously did not afford coverage while an insured was driving an unowned motorcycle and because nothing in the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—101 *et seq.*) requires any such construction of the policy. For reasons which we shall set forth presently, we agree with plaintiff and consequently reverse the judgment of the trial court.

A stipulated statement of facts was attached to and made part of the judgment of the court. The following account of the factual situation leading up to this declaratory judgment action is derived from that stipulation.

On June 18, 1971, defendant Laurie Larsen, with the permission of defendant Larry Joe Childers, was driving a 1970, 750-cubic-centimeter Honda motorcycle owned by Childers. Defendant Childers was a passenger on the motorcycle. At approximately 6:25 p.m., a collision occurred on Old Illinois Route 13 between this motorcycle and a car driven by defendant Mary Kay Nash Weiss. Defendant Childers thereafter brought suit in Jackson County against Laurie Larsen. In that suit, defendant Childers alleged that Laurie Larsen was negligent in the operation of the motorcycle, and that as a proximate result of such negligence, he sustained serious personal injuries. These injuries were alleged to have caused him to lose a great amount of wages and incur large medical bills. At the time of the accident, Laurie Larsen, as well as her father George Larsen, was a named insured on a standard form policy of vehicular liability insurance issued by State Farm. At the same time, defendant Childers had a liability policy on his motorcycle with Universal Underwriters Insurance Company.

Defendant Childers concedes that his injuries and losses are clearly not covered under the provisions of Laurie Larsen's policy relating to the accident which occurred while she was operating an "owned motor vehicle." He argues, however, that the trial court was correct in finding that under, the circumstances of this accident, damages for his injuries and losses are recoverable under the coverage provision relating to an insured's operation of an "non-owned automobile."

The policy in question defines all terms printed in italics under a separate "definitions" provision. The term "non-owned automobile" is an italicized term. Its definition, in turn, contains other italicized words. The relevant policy definitions are set out in pertinent part below.

"*Non-owned automobile*—means an *automobile, trailer,* or detachable living quarters unit, not
(1) owned by,
(2) registered in the name of, or
(3) furnished or available for the frequent or regular use of the named insured, * * *."
"*Automobile*—means a four wheel land motor vehicle designed for use principally upon public roads, * * *."

We will first address the issue whether there is anything in the language of the policy itself which would require this court to construe "non-owned automobile" to include a motorcycle.

■■ In Illinois, if the provisions of an insurance policy are ambiguous or equivocal, the policy is construed liberally in favor of the insured. (*Lumbermen's Mutual Casualty Co. v. Norris,* 15 Ill. App. 3d 95, 303 N.E.2d 505; *Glidden v. Farmers Automobile Insurance Association,* 57 Ill. 2d 330, 312 N.E.2d 247.) However, the general rule still remains that in the absence of ambiguity, words in an insurance policy are to be given their plain and ordinary meaning. (*Weiss v. Bituminous Casualty Corp.,* 59 Ill. 2d 165, 319 N.E.2d 491; *Hall v. Gamble Alden Life Insurance Co.,* 34 Ill. App. 3d 837, 341 N.E.2d 69.) The principle requiring construction of the language of an insurance contract so that such language favors the insured if language is ambiguous does not authorize the perversion of language or an exercise of inventive powers for the purpose of creating an ambiguity where none exists. *Lakatos v. Prudence Mutual Casualty Co.,* 113 Ill. App. 2d 310, 252 N.E.2d 123. See also *Heritage Insurance Co. v. Phelan,* 59 Ill. 2d 389, 321 N.E.2d 257.

The trial court in its memorandum stated that no conflicting clauses (*i.e.,* ambiguities) existed in the policy but that the language of the policy could lead an insured to believe that he was covered when driving any unowned licensed motor vehicle. We believe this finding is erroneous and that the general rule of construing the terms of a policy in their plain and ordinary sense applies here.

The definitions relevant to Laurie Larsen's coverage for operation of a "non-owned automobile" are set out above. We are of the opinion that from these definitions it plainly appears that the insured is not protected while operating an unowned motorcycle. Under the policy, a "non-owned automobile" means an automobile, trailer or detachable living quarters unit. The only term of these three which is arguably susceptible of any implied coverage of a motorcycle is "automobile." However, "automobile" is limited to a four-wheel, land vehicle under the policy's definition. This definition is not only clear, but it also comports with the common understanding of the word "automobile," which obviously

distinguished it from the plain and common meaning ascribed to the word "motorcycle."

Illinois courts have recognized that it is a matter of common knowledge that automobile means one thing and motorcycle means something essentially different. As stated in *Home Indemnity Co. v. Hunter*, 7 Ill. App. 3d 786, 790, 288 N.E.2d 879, 882:

> "An automobile is a car usually four-wheeled, propelled by an engine or motor that is part of it. A motorcycle, on the other hand, is a two-wheeled, * * * vehicle propelled by an internal combustion engine and resembling a bicycle but usually larger and heavier. [Citations.] * * * [T]he word 'automobile' had a meaning so well understood by the average person that '[n]o one would think of calling a motorcycle an automobile * * *.' [Citations.]"

The courts of other jurisdictions have also found that these terms have plainly distinct meanings. See, *e.g.*, *Labove v. Traders & General Insurance Co.* (La. App. 1969), 219 So. 2d 614; *Mittelsteadt v. Bovee* (1960), 9 Wis. 2d 44, 100 N.W.2d 376.

In *Labove v. Traders & General Insurance Co.*, the court of appeals of Louisiana was presented with a case factually similar to the one before this court. Plaintiff's decedent was a passenger on a motorcycle which was involved in a fatal motorcycle-automobile collision. The driver of the motorcycle had a liability insurance policy with the defendant for his 1967 Chevrolet which also covered him while operating a "non-owned automobile." The plaintiff argued that "non-owned automobile" should be construed to include a motorcycle. The court denied coverage stating:

> "We believe it would do violence to reason and the ordinary acceptation of the meaning of words to extend the provisions of this policy to motorcycles, where it was obviously intended to cover automobiles." 219 So. 2d 614, 616.

■■ After a thorough examination of the policy we find that there is nothing in the policy itself to induce a belief in the insured that his operation of another's motorcycle was covered under the policy. We would be perverting the language of the policy if we held otherwise. The only question remaining is whether there is any legislative mandate which would require us to accept such a strained construction of the term.

We are well aware that less than literal interpretations of terms have been made by courts presented with the question of insurance coverage under "uninsured motorists" provisions. For example, in *Hartford Accident & Indemnity Co. v. Holada*, 127 Ill. App. 2d 472, 262 N.E.2d 359, the court found that the term "uninsured automobile" in a policy's uninsured motorist section had to be construed to include a motor scooter. The court, however, clearly indicated that this result was

required because the uninsured motorist statute (Ill. Rev. Stat. 1963, ch. 73, par. 755a) mandates no liability policy shall be issued which does not protect the insured up to the basic limits set forth in section 7—203 of the Illinois Motor Vehicle Law (Ill. Rev. Stat. 1963, ch. 95½, par. 1—101 *et seq.*) for damages which he is legally entitled to recover from owners or operators of *uninsured motor vehicles.* The court found that a motor scooter is clearly a motor vehicle, and that term, as defined and used in the statute, must control over the narrower term incorporated in the policy.

Defendant Childers contends that section 7—202(2) of the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—202(2)), especially when considered in connection with the policy's provision entitled "Financial Responsibility Laws," requires this court to make a construction of the term "non-owned automobiles" to include motorcycle similar to the constructions made in cases like *Hartford Accident & Indemnity Co. v. Holada.* We cannot agree.

Section 7—202(2) of the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—202(2)) read at the time of the accident as follows:

> "Sec. 7—202. Exceptions to Requirements of Security. The requirements as to security and suspension as provided by Sections 7—201 and 7—205 of this Act shall not apply:
>
> * * *
>
> 2. To the driver, if not the owner of such motor vehicle, *if* there was in effect at the time of such accident a liability policy or bond with respect to his operation of *motor vehicles* not owned by him." (Emphasis added.)

The "Financial Responsibility Laws" provision of Laurie Larsen's State Farm policy reads:

> "*When certified as proof of future financial responsibility* under any motor vehicle financial responsibility law and while such proof is required during the policy period, this policy shall comply with such law if applicable, to the extent of the coverage and limits required thereby, but not in excess of the limits of liability stated in this policy. The *insured* agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement in this paragraph." (Emphasis added in part.)

■■ Defendant Childers concedes in his brief that in Illinois a driver does not have to have vehicle insurance to drive upon our highways, and that he is only required to post some type of security to protect one he injures by his operation, maintenance or use of a motor vehicle after he has been involved in an accident. Childers argues, however, that once a

motorist obtains a policy of insurance the Illinois Safety Responsibility Law comes into play and that section 7—202(2) of the statute requires a policy to cover the insured when operating all nonowned *motor vehicles,* including a motorcycle. The defendant further argues that the "Financial Responsibility Laws" provision of the policy indicated that State Farm was voluntarily agreeing to the provisions of the Illinois Safety Responsibility Law, including section 7—202(2). He argues that the indemnity portion of that provision supports his view of the statute in that it apparently contemplates the company's being held liable for occurrences which are not covered under the policy's provisions.

Our research reveals no case which has dealt with the effect of section 7—202 of the Illinois Safety Responsibility Law upon the construction of insurance policies. We believe that this is so because there is no requirement imposed upon insurance policies by this section. Section 7—202(2) provides that the requirement of posting security after an accident does not apply *if* the driver has insurance which covers his use of *motor vehicles* not owned by him. The use of the word "if" indicates to us that the legislature is not requiring insurance policies to have such a provision but rather is excusing the driver from posting monetary security in the event he has a policy which undoubtedly covers him while operating any land vehicle. When our legislature has desired to indicate a mandatory requirement for insurance coverage, it has clearly expressed such desire by its language. The uninsured motorist statute (Ill. Rev. Stat. 1975, ch. 73, par. 755a) is a good example. It basically states, as already noted, *no policy shall be issued unless coverage is provided therein* for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured and hit-and-run motor vehicles.

We are also unpersuaded that the "Financial Responsibility Laws" provision of the policy indicates that State Farm was voluntarily adopting any provisions of the Illinois Safety Responsibility Law. First, the provision speaks only of "when certified as proof of future financial responsibility." There is absolutely no evidence in the record that State Farm ever certified this policy to the Secretary of State as proof of future responsibility either voluntarily under section 7—329 of the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—329) or pursuant to section 7—315 of the Law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—315) at the request of the insured. There also is no evidence that State Farm contracted to issue a policy in conformity with article III of the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—301 *et seq.*) by placing a financial responsibility endorsement in its declarations as was the case in *Safeway Insurance Co. v. Harvey,* 36 Ill. App. 3d 388, 343 N.E.2d 679. Even if the policy were so certified, the only

requirements for the policy are those set out in section 7—317 of the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—317). None of the provisions of that section support defendant's argument that the statute requires vehicular liability insurance policies to cover insureds' operation of *all* unowned motor vehicles.

The fact that the policy's "Financial Responsibility Laws" provision contains a reimbursement section is not supportive of defendant Childers' argument. Such a provision is authorized by subsection (h) of section 7—317 of the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1971, ch. 95½, par. 7—317(h)). Quite apart from defendant's argument, such a provision would be beneficial to the company for liability it might incur because of the requirement of section 7—317 once it is certified as proof of the future financial responsibilities of an insured.

For the foregoing reasons, the judgment of the circuit court of Jackson County is reversed.

Reversed.

CARTER, P. J., and EBERSPACHER, J., concur.