CLIFFORD W. STURGEON *et al.*, Plaintiffs-Appellees, *v.* AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, Defendant-Appellant.

Fifth District   No. 79-154

Opinion filed November 7, 1979.

Dennis E. Rose, of Donovan, Hatch & Constance, of Belleville, for appellant.

Sterling and Altman, P. C., of Fairview Heights, for appellees.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiffs herein are father and son who brought suit to compel defendant to pay $5,000 pursuant to the medical expenses provision of an automobile insurance policy. After plaintiffs and defendant each moved for summary judgment, the trial court rendered judgment in favor of plaintiffs and later denied defendant's motion to reconsider. On appeal defendant raises the single issue of whether the vehicle driven by the son at the time of the automobile accident leading to this lawsuit was covered by the insurance policy under which plaintiffs seek to compel payment.

On September 14, 1976, Clifford and Katharyn Sturgeon, husband and wife, applied to Automobile Club Inter-Insurance Exchange for automobile insurance. In the application they listed themselves and their 26-year-old daughter who resided with them as operators. Two automobiles, a 1969 Chevrolet and a 1975 Oldsmobile, were declared in this application for coverage. Defendant issued a policy of insurance pursuant to the application. Later, for an additional premium of $75, the policy was amended, effective November 15, 1976, to add as an operator the Sturgeons' unmarried son, David, age 19 at the time.

Sometime in or around March of 1977, while the policy was in effect, David Sturgeon took title to a 1958 Chevrolet automobile, purchasing it with $100 of his own funds. The policy was never amended to include coverage of the 1958 Chevrolet nor was application for such amendment ever made or any premium ever paid regarding that automobile. About two months later on May 8, 1977, while David Sturgeon was driving the 1958 Chevrolet home following a night of camping, it went off the highway and overturned, injuring him as well as some of the four

passengers in the car at the time of the accident. David Sturgeon's ensuing medical expenses exceeded the policy limit of $5,000.

While the policy was in effect and at the time of the accident David Sturgeon resided with his parents. He used the 1958 Chevrolet regularly to go to work and for pleasure, apparently sharing the use of it with his girlfriend but keeping it in a garage at his residence. His father had no legal interest in the automobile and never used it. The record is silent as to any interest in or use of the vehicle by his mother. We assume there was none.

Construing the policy the trial court found David Sturgeon to be an "assured" and the 1958 Chevrolet to be an "owned" automobile within the terms of the policy, necessitating defendant's payment of the amount of the policy limit for David Sturgeon's medical expenses. Defendant concedes the first part of the finding but objects to the second.

The pertinent provisions of the policy's definition of "owned automobile" are these:

"(a) a private passenger * * * automobile owned by the assured described in this policy for which a specific premium charge indicates that coverage is afforded.

* * *

(c) a private passenger * * * automobile ownership of which is acquired by the named assured during the policy period provided,

(1) it replaces an owned automobile as defined in (a) above, or

(2) the exchange insures all private passenger * * * automobiles owned by the named assured on the date of such acquisition and the named assured notifies the exchange during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the exchange applicable to such automobile, or

(d) a temporary substitute automobile."

Upon application of the facts outlined above it may be seen that the 1958 Chevrolet does not qualify as an "owned automobile" under paragraph (a) because, although it is owned by an assured, David Sturgeon, it is not described in the policy and no premium was ever paid for its coverage. ■■ Plaintiffs insist that the phrase, "described in this policy" and that which follows modifies "assured" and consequently refers to David Sturgeon. We disagree. It is to be noticed that after the addition of David Sturgeon as an occasional driver of the 1969 Chevrolet, though not the 1975 Oldsmobile, the premium charge for "Excess Medical Payments," for example, on that automobile was increased from $6 to $13, while the premium charge for that kind of coverage on the other automobile

remained the same. Because premiums are assessed and paid in terms of a given automobile in any policy, the provision "for which a specific premium charge indicates that coverage is afforded" would have no meaning at all if it were applied, as plaintiffs urge it should be, to a person, that is, to "assured," rather than to "automobile." If the policy provision in question referred to "assured," as plaintiffs argue, it would read "for whom a premium has been paid." We think the reference of the phrase is plain and that it is to the "automobile * * * described in this policy for which a premium has been paid." Furthermore, plaintiffs' proposed construction is inconsistent with the manner of determining premium amounts, described on page iii of the policy, by a system of classification and rating which considers, among other things, the age, sex and marital status of the operator(s) of the automobile, the kind of use to be made of the automobile, and the frequency of use of the automobile by unmarried persons under the age of 25.

■■ We are mindful of the rule of construction which requires in the presence of ambiguity liberal construction against the insurer as drafter of an insurance policy. (*State Farm Mutual Automobile Insurance Co. v. Childers* (1977), 50 Ill. App. 3d 453, 365 N.E.2d 290.) Even liberal construction, however, will not breathe life into plaintiffs' proposed meaning. Therefore the 1958 Chevrolet cannot be said to come within the provision of paragraph (a).

Nor does that automobile meet the requirements of paragraph (c) because the named assured, Clifford Sturgeon, did not acquire ownership of it at any time, and it did not replace an owned automobile.

The policy defines a "temporary substitute automobile," referred to in paragraph (d), as "any automobile * * * not owned by the named assured, while temporarily used with the permission of the owner as a substitute for the owned automobile * * * when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Since the 1958 Chevrolet was not being used as a substitute for either of the owned cars described in the policy for any reason, the car owned by David Sturgeon does not fall within paragraph (d) either and, therefore, does not fit within any provision of the policy describing an "owned automobile" which might possibly pertain to it.

Although not raised or discussed by the parties, and not considered by the court in its decision, our examination of the policy in question and the attendant facts has disclosed a further reason in bar of plaintiffs' claim in this case. The portions of the policy regarding "Expenses For Medical Services" pertinent to injuries sustained by a driver in the instant circumstances are as follows:

> "Coverage 3—Medical Payments. To pay all reasonable expenses incurred within one year from the date of accident for necessary medical * * * services:

Division 1. To or for the named assured and each relative who sustains bodily injury * * * caused by accident,

(a) while occupying the owned automobile;

(b) while occupying a non-owned automobile, but only if such person has, or reasonably believes he has, the permission of the owner to use the automobile and the use is within the scope of such permission * * *."

Elsewhere in the policy are definitions, expressly said to apply to this part of the policy, of "named assured," "relative," "owned automobile" and "non-owned automobile."

In the policy " 'named assured' means the individual named in the declarations and also includes his spouse, if a resident of the same household." David Sturgeon was not the individual so named; his father, Clifford Sturgeon, was. " '[R]elative' means a relative of the named assured who is a resident of the same household, *but does not include any person who*, or whose spouse, *owns a private passenger automobile.*" (Emphasis added.) David Sturgeon is, of course, a relative of the named assured and a resident of his father's household, but he owns a private passenger automobile, having title to the 1958 Chevrolet automobile. Since the policy here unambiguously creates two classes of persons whose expenses for medical services will be paid under the policy, that is, the named assured and certain resident relatives, and since David Sturgeon does not qualify for inclusion in either class, neither he nor his father for him is entitled to any benefits for medical expenses arising out of the accident of May 8, 1977.

The purpose of the exception appears to be to limit liability in situations just such as this. The terms of this policy do not extend its coverage to members of the named assured's family who, perhaps together with their spouses, live with him and at the same time own cars of their own. Presumably the owner of an automobile will seek insurance for it and will thereby be protected under the policy for his own car against loss for medical services even when the need thereof is incurred while occupying the automobile of another, as the named assured under this policy is protected when he is occupying a nonowned automobile.

We note under "Exclusions" to "Expenses For Medical Services," constituting Part II of the policy, the statement:

"This policy does not apply under Part II to bodily injury:

"(a) sustained while occupying * * * (3) an automobile owned by the named assured or a resident of the same household if such automobile is not one defined herein as an 'owned automobile.' "

Thus not only does David Sturgeon not fit into either category of persons contemplated by the policy to receive medical payments, but there is as

well a specific exclusion within the medical expenses provision itself for persons in his situation, a resident of the named assured's household injured while occupying an automobile which does not fit the description of an "owned automobile" under the policy. The description of a "non-owned automobile" is "an automobile * * * not owned by or furnished for the regular use of either the named assured or any resident of the same household, other than a temporary substitute automobile." We have already established that David Sturgeon's car does not fit the description of a "temporary substitute vehicle," and since he owned the vehicle, it cannot possibly qualify as a "non-owned automobile."

In a memorandum filed in support of plaintiffs' motion for summary judgment, they appear to be confused about what was purchased for $75 when the unmarried 19-year-old was added as a fourth operator under the policy. They contend that if they did not acquire protection for the young man while operating the 1958 Chevrolet, they acquired nothing at all. As may be seen by a comparison of the original and amended declaration certificates, they received the insurer's promise to pay up to the same limits of liability specified before the addition of the young man as a driver and before the increase in the insurer's exposure created by the addition of a fourth operator, young, male, and unmarried. By plaintiffs' reasoning an insurer is liable for injury occurring to a listed operator in any automobile subsequently purchased and regularly used for any purpose by him as owner and principal operator though the insurer has no notice of the increase in his exposure and receives no consideration therefor. We find that an unsupportable contention.

For the foregoing reasons the summary judgment rendered by the circuit court in favor of plaintiffs is reversed and the cause is remanded for proceedings consistent with the views expressed herein.

Reversed and remanded.

KARNS and KASSERMAN, JJ., concur.