**PLAYBOY ENTERPRISES, INC., a Delaware corporation, Plaintiff-Appellee,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, Defendant-Appellant.**

**No. 84–1762.**

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1985.

Decided July 30, 1985.

Arthur W. Friedman, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for plaintiff-appellee.

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, FLAUM, Circuit Judge, and TIMBERS, Senior Circuit Judge.*

FLAUM, Circuit Judge.

This diversity case presents the issues of (1) whether the district court properly concluded that the general liability insurance policy issued by the defendant insurance company to the plaintiff insured provided coverage for a libel claim brought against the insured, and (2) whether the district court properly awarded the insured $287,-385.23 in attorneys' fees and costs incurred in defending against the libel action. For the reasons stated below, we affirm on the first issue and remand on the second.

## I.

In 1973, the plaintiff Playboy Enterprises, Inc. ("Playboy") purchased a general liability insurance policy from the defendant St. Paul Fire and Marine Insurance Company ("St. Paul") to cover the period from January 1, 1973, to January 1, 1976. The policy provided that Playboy would be insured against any claims arising from "the publication or utterance of a libel or slander or other defamatory or disparaging material, ... except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured."

On May 24, 1974, Penthouse International, Ltd. ("Penthouse") sued Playboy in federal district court, alleging libel and various business torts. This action was based on a letter that John Kabler, one of Playboy's regional advertising managers, had sent to eleven advertisers. The letter erroneously stated that Penthouse had failed to meet its circulation guarantees by not selling the number of magazines that it claimed to be selling. Playboy sent a copy of the summons and the complaint in the Penthouse libel action to St. Paul. When

St. Paul notified Playboy that it would not defend Playboy in the libel action, Playboy retained counsel to defend itself and incurred over $400,000 in attorneys' fees and costs. The libel action was subsequently dismissed by the district court.

On July 20, 1982, Playboy filed a complaint against St. Paul for breach of St. Paul's contract of insurance, claiming that St. Paul should have defended Playboy against the libel action and that St. Paul should reimburse Playboy for the attorneys' fees and costs that it incurred in defending itself in the libel case. On June 28, 1983, the district court granted Playboy's motion for summary judgment, holding that the distribution of the eleven letters by the Playboy employee was not excluded from the policy's coverage because such a distribution did not constitute advertising. The district court proceeded to award Playboy $395,459.95, which included $287,385.23 in defense costs from the Penthouse libel case and $108,074.72 in prejudgment interest. On October 19, 1983, the district court denied St. Paul's motion to reconsider and vacate the decision.

On appeal, St. Paul argues that the district court's decision should be reversed because the insurance policy at issue did not cover suits relating to the defamatory material that Playboy had disseminated. St. Paul alternatively claims that the district court did not correctly compute the amount of attorneys' fees and costs incurred by Playboy. We will address each of these claims in turn below.

## II.

### A. Insurer's Duty to Defend

In a lawsuit by an insured against its insurer following the insurer's refusal to defend its insured, a court must decide whether the insurer's initial refusal to defend breached the insurance contract. *Maneikis v. St. Paul Insurance Co.*, 655 F.2d 818, 822 (7th Cir.1981).[1] A court's primary

* The Honorable William H. Timbers, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, is sitting by designation.

1. Under Illinois law there are three options available to an insurer when it receives a request from its insured to defend against claims that, in the insurer's opinion, exceed the policy's

**428**

concern in interpreting an insurance policy is to effectuate the intent of the parties as expressed in the insurance contract. *State Farm Fire and Casualty Co. v. Moore*, 103 Ill.App.3d 250, 255, 58 Ill.Dec. 609, 614, 430 N.E.2d 641, 646 (1981). If the particular policy language at issue in a case is unambiguous, the court will give effect to the plain, ordinary, and popular meaning of the language. *Canadian Radium and Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 332, 104 N.E.2d 250, 254 (1952); *State Farm v. Moore*, 103 Ill.App.3d at 255, 58 Ill.Dec. at 614, 430 N.E.2d at 646; *State Farm Mutual Automobile Insurance Co. v. Childers*, 50 Ill.App.3d 453, 456, 8 Ill.Dec. 52, 54, 365 N.E.2d 290, 292 (1977). However, if the policy language is ambiguous, a court will construe such ambiguity in favor of the insured since the insurer drafted the policy. *State Farm v. Moore*, 103 Ill.App.3d at 255, 58 Ill.Dec. at 614, 430 N.E.2d at 646; *Great Central Insurance Co. v. Bennett*, 40 Ill.App.3d 165, 171, 351 N.E.2d 582, 588 (1976). This rule of strictly construing ambiguous provisions against the insurer is most rigorously applied in the case of ambiguous exclusionary provisions in which the insurer seeks to limit its liability. *State Farm v. Moore*, 103 Ill.App.3d at 255, 58 Ill.Dec. at 614, 430 N.E.2d at 646; *Dawe's Laboratories v. Commercial Insurance Co.*, 19 Ill.App.3d 1039, 1049, 313 N.E.2d 218, 225 (1974). Thus, exclusionary provisions are applied to deny the insured coverage only where their terms are clear, definite, and explicit. *State Farm v. Moore*, 103 Ill.App.3d at 256, 58 Ill.Dec. at 614, 430 N.E.2d at 646.

The issue before us is whether the eleven letters sent out by Kabler to advertisers and advertising agencies referring to Penthouse's failure to meet its circulation guarantees constitute a publication or utterance "in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured" under the policy's exclusionary provision. We conclude that the exclusionary provision is ambiguous and thus must be construed in favor of Playboy.[2]

The term "advertising" has been defined as follows: "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public especially by means of printed or broadcast paid announcements." *Webster's Third New International Dictionary of the English Language Unabridged* 31 (1963). This definition requires that the presentation of the item to be sold or approved be made in a medium directed to the public at large. The district court similarly concluded that the term "advertising" as used in the exclusionary provision referred to promotional material directed to the public at large, especially since the term is used in conjunction with two other terms that connote widespread public dissemination, "broadcasting" and "telecasting."

This interpretation of the term "advertising" to mean public or widespread distribution was adopted by the Minnesota Supreme Court in *Fox Chemical Co. v. Great American Insurance Co.*, 264 N.W.2d 385,

coverage: (1) seek a declaratory judgment regarding its obligations before the trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril since a court may later find that the insurer breached its duty to defend. *Maneikis v. St. Paul Insurance Co.*, 655 F.2d 818, 821 (7th Cir.1981).

**2.** Interpreting Illinois law, this circuit has held that even if recovery in the underlying action against the insured is premised upon several theories of liability, some of which may be excluded from the policy's coverage, the insurer

is still obligated to defend its insured if even one theory falls within the scope of the policy. *Maneikis v. St. Paul Insurance Co.*, 655 F.2d at 822. Since we find that Penthouse's third and fourth causes of action for trade libel and conspiracy to libel in its suit against Playboy fall within the scope of Playboy's policy with St. Paul and thus that St. Paul had a duty to defend Playboy in the action, we express no opinion as to whether Penthouse's three remaining counts for intentional interference with contract and business relations, unfair competition, and injunctive relief were also included within the scope of the policy.

386 (Minn.1978). In *Fox Chemical,* the court held that an alleged defamatory pamphlet prepared by Fox Chemical, the insured, for distribution to its personnel did not constitute advertising within the provision of an insurance policy, which, like the present exclusionary provision, excluded publications or utterances in the course of or related to advertising activities conducted by or on behalf of the insured. *Id.* In that case, Fox Chemical directed the printing of four hundred copies of a pamphlet to be circulated to the company's distributors to aid them in educating the salespersons employed to solicit purchase orders for the company's new synthetic oil product. *Id.* Only seventy-four of the four hundred pamphlets were ultimately delivered to distributors, and the pamphlet was never sent out in Fox Chemical's mail advertising campaign to potential customers. *Id.* One of Fox Chemical's competitors, Amzoil, obtained a copy of the pamphlet and commenced a libel action against Fox Chemical as a result of some defamatory material contained in the pamphlet. *Id.* at 385–86. Fox Chemical subsequently sued its insurance company for its failure to defend Fox Chemical in the libel action. *Id.* The Minnesota Supreme Court held that Fox Chemical's insurer had a duty to defend its insured because the limited distribution of the pamphlets to the company's distributors did not constitute a public distribution within the scope of the policy's exclusionary provision. *Id.* at 386. The court concluded that the provision's reference to advertising activities merely excluded any public or widespread distribution of defamatory material such as by posting the pamphlet in a public place or by reproducing it in the general media or in trade publications. *Id.*

■ We agree with the district court and the Minnesota Supreme Court in *Fox Chemical* that the term "advertising" does refer to the widespread distribution of promotional material to the public at large. Thus, if the insurance policy only excluded advertising activities, we would conclude that St. Paul breached its duty to defend Playboy because the dissemination of eleven letters would not constitute the widespread distribution of promotional materials to the public at large. However, the exclusionary provision in the present policy excludes any publication or utterance "in the course of *or related to* advertising." (Emphasis added). St. Paul argues that in order for Kabler's letters to be outside of the policy's coverage, the letters need only have a connection or affiliation with an advertising activity. St. Paul concludes that Kabler's statements, which were made within the scope of his employment as an advertising manager for Playboy, are connected with and relevant to advertising activities—activities intended to attract Penthouse advertisers to Playboy.

In response to St. Paul's interpretation, Playboy argues that if St. Paul's construction of the policy were accepted, then there would never be policy coverage for defamatory written or oral statements that might even remotely be characterized as somehow promoting the sale of advertising space. Playboy stresses that in view of the myriad ways in which its magazine endeavors to promote the sale of advertising space. St. Paul's construction of the exclusionary provision would result in a major gap in policy coverage.

We agree that Kabler's dissemination of the eleven letters, while not advertising *per se,* was related to an activity designed to promote one of Playboy's products, advertising space, to potential buyers of the space and thus appears to come within the plain meaning of the clause "related to advertising activities." However, we are also cognizant of the fact that this construction of the exclusionary provision could completely exclude any activities conducted by Kabler, as Playboy's advertising manager, because one could always attempt to show that any act performed by him was related to an advertising activity. The ambiguous nature of the exclusionary provision is evidenced by Playboy's and St. Paul's varying interpretations of the purpose of the policy. St. Paul claims that the policy only covers publication of defamatory articles and literature in the maga-

zine itself, while Playboy argues that there is nothing in the record or the policy itself to suggest that this was the policy's only purpose. In view of the several equally plausible interpretations that can be placed on the provision, we conclude that the exclusionary clause is ambiguous and that we must construe it in favor of the insured. Therefore, we hold that St. Paul breached its duty to defend Playboy in the libel suit.

## B. Attorney's Fees

After granting Playboy's motion for summary judgment, the district court awarded Playboy $287,385.23 in attorneys' fees for defending against the libel action and $108,074.72 in prejudgment interest at the statutory rate of 5% per annum. *See* Ill.Rev.Stat. ch. 17, § 6402 (1983). Playboy submitted evidence to the district court in the present case that it had incurred $389,535.27 in connection with the Penthouse litigation. However, since Playboy had been awarded $102,150.04 in costs and fees in the Penthouse suit by the district court in New York and the Second Circuit as a result of Penthouse's refusal to produce certain of its financial records pursuant to court order, the district court in the present case subtracted the $102,150.04 from the total amount for costs and fees of $389,535.27 for a net result of $287,385.23. The district court added the prejudgment interest to this net result. St. Paul had argued to the district court that more than $80,000 of the attorneys' fees incurred by Playboy were represented on time slips containing undecipherable or nonspecific billing entries such as descriptions of time spent for "legal research." The district court did not address St. Paul's argument in its order on attorneys' fees. St. Paul now claims that the district court's assessment of attorneys' fees and costs against it was erroneous and should be reversed.

■ Under Illinois law, an insurer that breaches its duty to defend its insured is liable to its insured for any defense costs and for the amount of any judgment or settlement. *Maneikis v. St. Paul Insurance Co.,* 655 F.2d at 827. The Supreme Court has held in an analogous context that a district court must provide a concise but clear explanation of its reasons for an award of attorneys' fees. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). *See also Lynch v. Milwaukee,* 747 F.2d 423, 427–28 (7th Cir.1984). This need for adequate explanation by the district court is necessary in order for an appellate court to engage in a meaningful review of the award. *Lynch v. Milwaukee,* 747 F.2d at 428.

■ In the present case, the district court appears to have adopted without comment the breakdown of costs and fees submitted by Playboy in its reply memorandum in support of its motion for the entry of judgment against St. Paul. The district court did not offer any explanation for its rejection of St. Paul's claim that over $80,000 in attorneys' fees were summarized in undecipherable or nonspecific billing entries. In order to allow us to engage in a meaningful review of the district court's award of $287,385.23 in attorneys' fees and costs, the district court needed to provide a brief explanation of the reasons for its award. This explanation is especially appropriate in a case like the present one where the district court did not have first-hand knowledge of the reasonableness of the fees claimed by Playboy since the court did not preside over the libel suit. Because of the need to have the district court explain the reasons for its award, we must remand that portion of the district court's decision dealing with attorneys' fees, so that a concise explanation of the reasons for the award can be provided to this court.

In conclusion, we affirm the district court's decision for Playboy on its claim that St. Paul breached its duty to defend Playboy and remand that portion of the district court's decision dealing with attorneys' fees.