566 N.E.2d 477 (1990)
207 Ill. App.3d 881
152 Ill.Dec. 790
SCOTTISH & YORK INTERNATIONAL INSURANCE GROUP/GUARANTEE INSURANCE COMPANY, Plaintiff-Appellee,
v.
COMET CASUALTY COMPANY and Prestige Casualty Company, Defendants-Appellants.
No. 1-88-3543.
Appellate Court of Illinois, First District, First Division.
December 24, 1990.
*478 Beerman, Swerdlove, Woloshin, Barezky & Berkson, Chicago (Alvin R. Becker, Howard A. London and Timothy M. Kelly, of counsel), for defendants-appellants.
Judge & Knight, Ltd., Park Ridge (Jay S. Judge and Martin D. Judge, of counsel), for plaintiff-appellee.
Justice MANNING delivered the opinion of the court:
Defendants, Comet Casualty Company and Prestige Casualty Company, (hereafter "Comet") appeal from the order of the circuit court of Cook County which granted judgment in the amount of $20,318.65 and summary judgment on the issues presented in the declaratory action in favor of plaintiffs, Scottish & York International Insurance Group/Guarantee Insurance Company, (hereafter "Guarantee"). The facts are as follows.
On February 5, 1983, Thomas J. Bock, (hereafter "Bock"), while operating a three and one-half ton truck owned by Buffalo Grove Rental, (hereafter "Buffalo"), a rental equipment dealer, was involved in an accident with a minor pedestrian, Howard Sussman. Buffalo had leased the truck to Tom Bailey pursuant to the terms of a written rental agreement, and it is not disputed that Bailey gave permission to Bock to drive the truck.
The minor, by his parent and natural guardian, filed suit (hereafter "the Sussman suit") against Buffalo and Bock, alleging that Bock negligently operated the vehicle as an agent or servant of Buffalo. Guarantee who had issued its business liability insurance policy to Buffalo to conform to the "Owners of For Rent Vehicles For-Hire Act" (Ill.Rev.Stat.1987, ch. 95½, pars. 9-101 et seq.), provided a defense in the Sussman suit. Guarantee made repeated but unavailing requests upon Comet, whose family combination automobile policy provided liability coverage to Bock as the named insured, to share the cost of the Sussman action on a pro rata basis. However, Comet neither participated in the defense nor the settlement negotiations as it contended in letters addressed to Guarantee that the truck was not an "automobile" under the terms of its policy, and if it were, it would not be covered under the policy's exclusion that states: "[t]his policy does not apply under Part I: (k) to any automobile rented or leased by the insured where other valid or collectible insurance has been purchased by or furnished to the insured in connection with such rental or lease."
Subsequently, Guarantee settled the Sussman suit by paying out its policy limits of $50,000, and incurred $10,637.30 in defense costs. Thereafter, Guarantee filed an action for declaratory relief and motion *479 for summary judgment asserting that the policies issued by both insurers contained similar excess clauses, Comet by breaching its duty to defend was precluded from asserting any policy defenses, and Comet was obligated to reimburse Guarantee for settlement and defense costs.
Comet countered by restating the position advanced in the letters to Guarantee and further maintained that assuming any coverage under the Comet policy, it neither had a duty to defend as Guarantee's policy provided primary coverage nor a duty to reimburse because Guarantee settled the Sussman suit for its policy limits.
On September 23, 1986, the trial court granted Guarantee's motion for summary judgment, finding Comet liable for a pro rata share of the settlement and reserved ruling on the question of pro rata sharing of the costs of defense. Thereafter, Guarantee filed its motion to enter pro rata judgment, arguing that based upon the authority of Continental Casualty Co. v. Travelers Ins. Co. (1967), 84 Ill.App.2d 200, 228 N.E.2d 141, Comet was required to share the costs of settlement and defense on a 50/50 basis. Comet responded that sharing of the costs on an equal basis was improper as each insurer was responsible for only that proportion of the judgment that its policy limits represented.
On April 28, 1988, the trial court entered judgment in favor of Guarantee "in the amount of $20,318.65, said amount representing the $15,000 policy limit of defendant's (Comet's) policy and fifty percent of the total cost of defense of $10,637.30," and Comet now appeals from that order.
On appeal, Comet argues: (1) that it had no duty to defend because the truck was not a "non-owned automobile" within the meaning of its policy definition, (2) assuming the contrary, Comet, as the excess carrier, had no duty to defend because Guarantee's policy provided primary coverage, (3) that as the excess carrier Comet had no duty to reimburse until Guarantee's primary coverage limit was exhausted and it had paid sums in excess of that coverage, which did not occur here, and (4) that the trial court erred in its pro rata distribution of settlement and defense costs.
On appeal from a trial court's grant of summary judgment, a reviewing court's sole function is to determine whether the trial court properly concluded that there were no genuine issues of material fact, and if there were none, whether judgment was correct as a matter of law. (See Federal Ins. Co. v. Economy Fire & Casualty Co. (1989), 189 Ill.App.3d 732, 136 Ill.Dec. 1017, 545 N.E.2d 541; Coomer v. Chicago & Northwestern Transp. Co. (1980), 91 Ill.App.3d 17, 46 Ill.Dec. 812, 414 N.E.2d 865; see also Ill.Rev.Stat.1987, ch. 110, par. 2-1005.) Our courts have found that summary judgment is proper when the issue is determinable solely as a matter of law (Kroll v. Sugar Supply Corp. (1983), 116 Ill.App.3d 969, 72 Ill.Dec. 396, 452 N.E.2d 649; Smith v. Rengel (1981), 97 Ill.App.3d 204, 52 Ill.Dec. 937, 422 N.E.2d 1146, Martin v. American Legion Post # 784 (1978), 66 Ill.App.3d 116, 22 Ill.Dec. 864, 383 N.E.2d 672; Rivota v. Kaplan (1977), 49 Ill.App.3d 910, 7 Ill.Dec. 176, 364 N.E.2d 337), particularly where only construction and validity of a contract (Bates v. Select Lake City Theater Operating Co. (1979), 78 Ill.App.3d 153, 33 Ill.Dec. 742, 397 N.E.2d 75) or insurance policy is at issue. (Community Nat'l Bank in Monmouth v. St. Paul Fire & Marine Ins. Co. (D.C.1975), 399 F.Supp. 873; State Farm Mut. Ins. Co. v. Schmitt (1981), 94 Ill. App.3d 1062, 50 Ill.Dec. 493, 419 N.E.2d 601; Doll v. Farmers Auto. Ins. Ass'n (1977), 54 Ill.App.3d 868, 12 Ill.Dec. 635, 370 N.E.2d 258; Van Vactor v. Blue Cross Ass'n (1977), 50 Ill.App.3d 709, 8 Ill.Dec. 400, 365 N.E.2d 638.) However, such interpretation must be correct as a matter of law, and the factual and legal right of the moving party to summary judgment must be free from doubt. See Sheetz v. Morgan (1981), 98 Ill.App.3d 794, 54 Ill.Dec. 117, 424 N.E.2d 867; Lawrence v. Rubio (1980), 85 Ill.App.3d 472, 40 Ill.Dec. 743, 406 N.E.2d 946; Gagliardo v. Vodica (1978), 58 Ill.App.3d 1053, 16 Ill.Dec. 424, 374 N.E.2d 1302; Watkins v. Lewis (1968), 96 Ill. App.2d 182, 237 N.E.2d 830; Scharf v. Waters (1946), 328 Ill.App. 525, 66 N.E.2d 499.
*480 While we do not quarrel with the trial court's holding that there were no genuine issues of material fact present, we do question the propriety of the judgment here with respect to the trial court's finding that the truck involved in the accident was an automobile within the meaning of Comet's family automobile policy and the common definition of such term. As the construction of Comet's policy is a question of law (Sawyer Fruit & Vegetable Co-Operative Corp. v. Lumbermens Mut. Casualty Co. (1983), 117 Ill.App.3d 407, 73 Ill. Dec. 1, 453 N.E.2d 826), the question of coverage of the truck is a proper issue to be determined upon review, independent of the trial court's judgment (Bohen Int'l, Inc. v. Liberty Mut. Ins. Co. (1983), 120 Ill.App.3d 657, 76 Ill.Dec. 244, 458 N.E.2d 644), as it is incumbent upon this court to determine whether the law has been properly applied based upon the record. Fidelity Gen. Ins. Co. v. Nelsen Steel & Wire Co. (1971), 132 Ill.App.2d 635, 270 N.E.2d 616.
The relevant provisions of Comet's policy state, in pertinent part:
"Part I Coverage A-Bodily Injury Liability.
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury, sickness, or disease, including death resulting therefrom, sustained by any person; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile."
There is no question that Bock is an insured under the policy and that he was not driving an owned automobile at the time of the accident, rather the truck was owned by Buffalo. The trial court in agreeing with Guarantee found that although the policy here did not define the term "automobile," truck was included under the definition of "non-owned automobile." We disagree.
The Comet policy defines "owned automobile" as:
"(a) a private passenger, farm or utility automobile, which is a four wheel land motor vehicle, described in this policy for which a specific premium charge indicates that coverage is afforded;
(b) a private passenger, farm or utility automobile for which ownership is newly acquired;
(c) a temporary substitute automobile; which means any private passenger, farm or utility automobile, not owned by the named insured, while temporarily used as a substitute for the owned automobile when withdrawn from normal use."
Under the same definition portion of the policy entitled "Definitions-Part I," the terms "private passenger," "farm," and "utility" automobiles are defined respectively as:
"`private passenger automobile' means a four wheel private passenger, station wagon or jeep style vehicle;
`farm automobile' means an automobile of the truck type with a load capacity of fifteen hundred (1500) pounds or less not used for business or commercial purposes other than farming;
`utility automobile' means an automobile, other than a farm automobile, with a load capacity of fifteen hundred pounds or less of the pick-up-body, sedan delivery or panel truck type not used for business or commercial purposes."
"Non-owned automobile" is defined as:
"an automobile not owned by or furnished or available for the regular use of the named insured, or of any relative of the same household, other than a temporary substitute vehicle."
This court addressed a situation very similar to the case at bar in Weed v. Ohio Farmers Ins. Co. (1977), 53 Ill.App.3d 826, 11 Ill.Dec. 564, 368 N.E.2d 1310. In Weed, it was held that a flatbed truck which was being operated by the insured at the time of the accident did not come within coverage of the family automobile policy for bodily injury arising out of use of either an "owned automobile" where "truck type automobile" and "utility automobile" referred only to a farm vehicle with a load *481 capacity of 1500 pounds or less or a panel truck type, or a "non-owned automobile" which was defined identically to the non-owned automobile here.
We believe the Weed's court analysis is applicable to the present matter. Similar to the policy in Weed, the policy here does not define "automobile," but does contain a specific definition of the class of automobiles that are included in the terms "owned automobile" and "temporary substitute automobile."
Moreover, we find no merit in Guarantee's argument that the term "automobile" in a generic sense covers both trucks and passenger cars. Neither does a standard dictionary so define the term "automobile"; i.e., "automobile" means "a self propelled passenger vehicle that usually has four wheels and an internal combustion engine used for land transport." The American Heritage Dictionary 143 (2d College ed. 1982.)
It is well established that insurance contracts, like other contracts (State Farm Mut. Auto. Ins. Co. v. Salerno (1984), 121 Ill.App.3d 384, 76 Ill.Dec. 940, 459 N.E.2d 1075), are to be construed according to the sense and meaning of the terms which the parties have employed (Pioneer Life Ins. Co. v. Alliance Life Ins. Co. (1940), 374 Ill. 576, 586, 30 N.E.2d 66), but, this does not alter the principle that as contracts, insurance policies are subject to the general rules of construction which apply to other contracts. (Rogers v. Robson, Masters, Ryan, Brumund & Belom (1979), 74 Ill.App.3d 467, 30 Ill.Dec. 320, 392 N.E.2d 1365, aff'd (1980), 81 Ill.2d 201, 40 Ill.Dec. 816, 407 N.E.2d 47.) Accordingly, we are required to examine the policy in its entirety and to interpret relevant parts in light of the whole document, in order to determine whether any ambiguity or uncertainty exists in the language at issue. (Ohio Casualty Ins. Co. v. Tyler (1980), 85 Ill.App.3d 410, 412, 40 Ill.Dec. 846, 407 N.E.2d 77; see also Lang v. Monarch Life Ins. Co. (1979), 75 Ill.App.3d 938, 942, 31 Ill.Dec. 549, 394 N.E.2d 751.) Where the language of the policy is clear and unambiguous, it must be taken in its plain, ordinary and popular sense. Johnson v. State Farm Mut. Auto. Ins. Co. (1979), 78 Ill. App.3d 144, 33 Ill.Dec. 466, 396 N.E.2d 1190.
In applying the foregoing principles of law to the case at bar, we find although the term "automobile" is not specifically defined in the Comet policy, the three and one-half (3½) ton truck involved in the accident is not covered under the definition of "non-owned automobile" where the policy's definitions of "owned automobile" and "temporary substitute automobile" are limited to private passenger, farm or utility automobiles. An elementary principle of contract law provides that, in a contract in which there are general and specific provisions relating to the same subject, the specific provisions are controlling. Faith v. Martoccio (1974), 21 Ill.App.3d 999, 1003, 316 N.E.2d 164.
Moreover, the conclusion here that large trucks are not contemplated or covered by the Comet policy is consistent with decisions of the appellate court that have construed policy definitions contained in family automobile policies that were virtually identical to Comet's policy. (See Tyler, 85 Ill. App.3d 410, 40 Ill.Dec. 846, 407 N.E.2d 77; Weed, 53 Ill.App.3d 826, 11 Ill.Dec. 564, 368 N.E.2d 1310.) In State Farm Mut. Auto. Ins. Co. v. Childers (1977), 50 Ill.App.3d 453, 8 Ill.Dec. 52, 365 N.E.2d 290, this court held that under the non-owned provision of the liability policy that defined "nonowned automobile" to mean an automobile, trailer, or detachable living quarters unit and described automobile as a four-wheel land motor vehicle for use principally upon public roads, coverage was not afforded the insured while operating a nonowned motorcycle. Similarly, in State Farm Mut. Auto. Ins. Co. v. Salerno (1984), 121 Ill. App.3d 384, 76 Ill.Dec. 940, 459 N.E.2d 1075, this court found that a tow truck which was driven by the insured and had two tires on its front axle and four tires on its rear axles, was not covered by the insured's policy as the policy defined "automobile" as a "four wheel land motor vehicle designed for use principally upon public roads." Salerno, 121 Ill.App.3d at 386, 76 Ill.Dec. 940, 459 N.E.2d 1075; but see Uhwat *482 v. Country Mut. Ins. Co. (1984), 125 Ill.App.3d 295, 80 Ill.Dec. 618, 465 N.E.2d 964, where the court held a pickup truck, not otherwise mentioned or defined in the policy, was a "land motor vehicle" in the plain and ordinary sense of that phrase.
Accordingly, we find there to be no ambiguity or uncertainty in the language of the Comet family automobile policy. When the policy is considered as a whole, we conclude that the three and one-half ton truck is not an automobile within the meaning of the policy. Even assuming the truck could be considered a non-owned automobile within the policy's definitions, we would agree with Comet that based upon the factual matrix here presented, there was no potential for coverage because of the existence of the valid exclusionary provision mentioned above. However, in light of our determination of the issue as to non-coverage of the truck, it is not necessary for us to address the other issues raised by Comet on this appeal.
For the foregoing reasons, the judgment of the circuit court is reversed.
REVERSED.
CAMPBELL and O'CONNOR, JJ., concur.