Prudence Mutual Casualty Company, a Corporation, Plaintiff-Appellant, v. Edward F. Sturms, Ruth E. Sturms, Mable P. Oakes and Frederick C. Currier, Jr., Defendants-Appellees.

Gen. No. 48,585.

First District, Third Division.

October 3, 1962.

George F. Barrett, of Chicago (Leo M. Tarpey, Jr., of counsel), for appellant.

Clarence R. Serb, of Chicago, for Frederick C. Currier, Jr., appellee; James A. Dooley, of Chicago, for Edward F. Sturms, Ruth E. Sturms and Mable P. Oakes, appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an action by Prudence Mutual Casualty Company, an insurance company, for a declaratory

judgment seeking an interpretation of the so-called "substitution clause" of an insurance policy issued to defendant Frederick C. Currier, Jr. The other three defendants are the plaintiffs in a personal injury action against Currier, Jr. growing out of a collision between a car driven by him and one driven by Edward F. Sturms. To avoid confusion we will refer to plaintiff as the "insurance company," to defendant Currier, Jr. as the "insured" and to the other defendants as the "injured persons."

The policy covers liability growing out of the use of an automobile described as a 1954 Chevrolet, but provision is made for coverage of an automobile "while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." The liability of the insurance company for personal injuries resulting from the accident depends on the construction of that clause in the policy. The trial court construed the clause as covering a substitute car, and from that judgment the insurance company has appealed.

The case was heard on an agreed statement of facts from which the following facts, pertinent to the issue, appear. During the year 1957 the insured was attending Xavier College at Cincinnati, Ohio. On or about May 4 he drove his Chevrolet to Chicago to spend the weekend at home. On that date he discovered he was having difficulty with the clutch on his car. In order to get back to school he borrowed a 1954 Ford owned by his father. On May 5, he drove the Ford from Chicago to Cincinnati and resumed his classes. On May 6 his father drove the Chevrolet to an automobile agency to have it repaired. It was repaired on that date and on or about May 6 or within three or four days thereafter it was picked up by the insured's father, driven home by him and placed in the garage there awaiting the insured's return from Cincinnati. The insured retained possession of his father's Ford

between May 5 and May 31, during which time he was attending school in Cincinnati. During that period he lived near the University and did not use his father's car for transportation. He did not wish to return to Chicago during that time because of his school work. The school term ended on May 31, 1957, and on or about June 1, the insured while returning home from Cincinnati in his father's car was involved in a collision in Lake County, Indiana, with an automobile driven by Edward F. Sturms, one of the injured persons, in which the defendants Ruth E. Sturms and Mable P. Oakes were passengers. After the accident the insured's father drove the 1954 Chevrolet from Chicago to Hammond, Indiana, to pick up the insured. Subsequently the injured persons filed an action for damages against the insured, alleging personal injuries as a result of the accident. Following the institution of that suit the instant case for construction of the policy was instituted. The trial court found that the 1954 Ford was a substitute car within the meaning of the clause hereinbefore referred to.

The insurance company contends that the substitution clause applied only while the covered car was "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction," and that this "withdrawal" ceased upon the insured's car being repaired. They do not, however, go so far as to argue that the coverage of the substitute car expired at the moment the repairs were completed. Therefore the issue is when, after repair, does coverage of a substitute car expire?

The insured argues that the policy is not clear as to when an insured automobile ceases to be "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Hence, he argues, the court must resolve the ambiguity by finding the intention of the parties. Counsel for the insurance

306

company recognizes that time would be allowed for the insured to retake the car after it had been repaired. It is also recognized by the parties that the essential purpose of the limitation placed on the application of the substitute clause is to avoid the possibility of having more than one car covered at the same time.

The clause in question uses the words "withdrawn from normal use." The word "withdrawn" has many meanings. One is given in Funk & Wagnall's Standard Desk Dictionary as follows: "To keep or abstract from use." The covered car was kept or abstracted from normal use because of its breakdown. So far as appears from the facts, after the father placed the insured's car in the garage awaiting the insured's return, the father used it only when he drove it to pick up the insured after the accident. The insured's car thus was not returned to normal use prior to the time of the accident. Therefore the essential purpose of the limitation placed on the clause, i. e., to avoid the possibility of having more than one car covered at the same time, was satisfied. Since there was no normal use of the insured's car by his father, it is immaterial that the father could have used the car if he so desired. Mid-Continent Cas. Co. v. West, 351 P2d 398 (Okla).

Plaintiff cites Pennsylvania Threshermen & Farmers Mut. Ins. Co. v. Robertson, 259 F2d 389 (4th Cir, 1958) in support of its position. In that case husband and wife temporarily exchanged cars in order for the husband to have the wife's car repaired. They had to be separated for a week. At the end of the week they did not meet as they had agreed because the wife had to visit her sick father. Therefore the wife continued to use her husband's car. During that time the husband was normally using his wife's car, which had been repaired. During the following week, the wife while using her husband's car was involved

in an accident. The court ruled that the substitute car was not covered by the insurance policy. That case is substantially different from the instant case because there "her car was actually being used by her husband." While the insured used the substitute car, her car not only had been repaired, but was in normal use. It was the normal use by the husband which caused the substitute car not to be covered. Although the other cases cited by the parties deal with the interpretation of a "Temporary Substitute Automobile" clause, they deal with questions not raised in the instant case.

 There is no time limitation in the policy for the insured to retake his car. Where no time is provided for the performance of a contract, the law will imply a reasonable time. Miller v. Pettengill, 392 Ill 117, 63 NE2d 735. Therefore, once it is determined that the insured's car was withdrawn from normal use while he was using the substitute car and that his car was not being normally used after it had been repaired, it must be determined whether the insured picked up his car within a reasonable time after it had been repaired. The insured was pursuing his normal course of study at the university in Cincinnati, and we do not consider that any reasonable interpretation of the clause would require him to return home solely for the purpose of claiming his car in the short period intervening between the time it was repaired and expiration of the school term. Such a requirement would not be reasonable.

Since there was neither normal use of the insured's car prior to the accident nor failure of the insured to pick up his car within a reasonable time, the substitute car at the time of the accident was covered under the policy.

Judgment affirmed.

DEMPSEY, P. J. and McCORMICK, J., concur.