Nationwide Insurance Company, a Foreign Corporation, Plaintiff-Appellant, v. Douglas Ervin, Jones Transfer Company, and Robert Holmes, Defendants-Appellees.

**Gen. No. 67–37.**

Second District.

November 7, 1967.

Barrick, Jackson and Switzer, of Rockford, for appellant.

Nordquist and Anderson, of Rockford, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The Nationwide Insurance Company brings this appeal from a decree of the Circuit Court of the 17th Judicial Circuit, Winnebago County, entered December 29, 1966, that found that an automobile insurance policy issued by it to Douglas Ervin "covered" an accident that had occurred on September 26, 1964, and that a certain automobile operated by Ervin at the time of the accident was a "replacement" as defined in the policy.

On August 16, 1963, Nationwide issued its policy of automobile insurance number 94–441–489 to Ervin for coverage of his 1958 Chevrolet. In July of 1964 the transmission of the Chevrolet, according to Ervin, "went out" and he purchased a 1958 Cadillac. The Chevrolet was retained by Ervin, although inoperable, and left in the driveway of his home.

On September 26, 1964, Ervin was in an automobile accident with the Cadillac that involved a truck owned by the Jones Transfer Company, and another automobile in which Robert Holmes was a passenger. Holmes subsequently brought suit against Ervin and Jones Transfer for injuries allegedly suffered as a result of

that accident. Nationwide was called upon by Ervin to defend him in that suit pursuant to the policy.

Nationwide did employ counsel to represent Ervin but reserved its rights to disclaim coverage for the accident. They then filed a second suit that requested the court to determine its obligations under the insurance contract with Ervin and to find that it had no obligations with respect to the accident with Holmes. This appeal is from the adverse determination of the trial court.

Section VI of the insurance contract, entitled "Use of Other Land Motor Vehicles," provides that the policy-holder would be insured against liability to third parties within the specified limits under certain circumstances even when he was operating an automobile other than that named in the policy. Paragraphs (a) and (b) of that section provide that there would be coverage in the following situations:

> "a.   A land motor vehicle not owned by the Policyholder, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of breakdown, repair, servicing, loss or destruction, or

> "b.   A land motor vehicle, ownership of which is acquired by the Policyholder first named in the Declarations, and if an individual, his spouse residing in the same household, which has not, except as a replacement, been the subject of such ownership for more than 30 days next preceding the occurrence . . ."

It is agreed by the parties that the policy would have afforded protection to Ervin at the time of the accident if the Cadillac was in fact a "replacement" of the Chevrolet, but that it would not be applicable if the Cadillac was an "additional automobile" purchased by Ervin, since it was acquired more than 30 days preceding the accident.

434

Ervin testified that the Chevrolet had completely broken down in July of 1964 and that the Cadillac was purchased to replace it. He secured a new license for the Cadillac and explained he did not sell or trade the Chevrolet because he still owed a substantial balance to a finance company for its original purchase. He further stated that it would have been necessary for him to pay $75 in cash to repair the Chevrolet and that he purchased the Cadillac with no cash down payment. The Chevrolet remained in Ervin's driveway until it was repaired in the spring of 1966. He paid the bill of $75 to repair the transmission and with Ervin's permission, a friend of his drove the car on a few occasions. In a statement made to an adjuster for Nationwide Ervin testified that he bought the Cadillac as an additional car for one of the children. In addition, he admitted that he would have driven the Chevrolet to work after it was fixed if he had possessed a valid driver's license.

Nationwide contends in this appeal that, under the circumstances, the Cadillac was not a "replacement" of the Chevrolet as contemplated by the insurance contract since a replacement, by definition, must replace something that is discarded. Ervin, on the other hand, urges that he did in fact, discard the Chevrolet since it was no longer of service to him and that he retained it only because of the financial obligations involved in its disposition or repair.

■■ The parties to an insurance contract are free to incorporate such provisions into it, if not unlawful, as they see fit and it is then the duty of the court to enforce those provisions. The well known rule that all ambiguities in an insurance policy will be construed most strongly against the insurance company, as the party that drafted the policy, only has application where an ambiguity in fact exists and a court may not distort the contract to create the ambiguity itself. Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill 576, 30 NE2d 66; Dreher

435

v. Aetna Casualty & Surety Co., 83 Ill App2d 141, 226 NE2d 287; Canadian Radium & Uranium Corp. v. Indemnity Ins. Co. of North America, 342 Ill App 456, 97 NE2d 132.

■ An insurance contract should be construed in accordance with the general contract rule of construction that the agreement should be ascertained as a whole to determine the intention of the parties and the purpose which they sought to accomplish. Jensen v. New Amsterdam Ins. Co., 65 Ill App2d 407, 213 NE2d 141; Fogelmark v. Western Casualty & Surety Co., 11 Ill App2d 551, 137 NE2d 879.

When we apply this general rule of construction to the policy before us, it is apparent that protection against the enumerated risks was afforded to the insured for the so-called "named" automobile, the Chevrolet, and in certain circumstances for an automobile other than that named. The coverage for the non-named automobile was restricted to three situations, to wit:

(1)   A replacement for the named automobile

(2)   A temporary substitute, not owned by the insured, while the named automobile was withdrawn from normal use, and

(3)   An additional, owned automobile but for only 30 days after acquisition by the insured.

■ The enumeration in the policy of those few situations where coverage was afforded to the insured with reference to another automobile obviously served to limit the areas of risk assumed by the insurer. It provided coverage for a second automobile for only a short time to permit the owner an adequate opportunity to acquire the necessary additional insurance and was never intended to cover two automobiles for any protracted period. The provision for a substitute automobile is applied to those situations where the named automobile was in a

repair shop or withdrawn from use for a short period since the substitute could not be owned by the insured. It was never contemplated that coverage would be extended to more than one automobile for other than a brief period of time. Consequently, a replacement could only exist under the provisions of this contract where the insurer had no further obligations in regard to the named automobile.

It is the contention of Ervin that Nationwide had no obligations in connection with the Chevrolet during the period from July of 1964 to the spring of 1966. We do not agree with that contention.

Under the facts and circumstances herein related, we are of the opinion that the Cadillac automobile was not a replacement as contemplated by the insurance contract and Nationwide had no obligation to Ervin in regard to the accident in September of 1964.

Judgment reversed.

DAVIS, P. J. and MORAN, J., concur.