MARY KAYE DEASON, Indiv. and as Adm'x of the Estate of David A. Deason, Deceased, Plaintiff-Appellee, v. METROPOLITAN PROPERTY & LIABILITY INSURANCE COMPANY, Defendant-Appellant (Florence Petro, Adm'r of the Estate of George Petro, Deceased, *et al.*, Counterplaintiffs-Appellees; Auto-Owners Insurance Company *et al.*, Defendants).

Fifth District   No. 5—84—0073

Opinion filed January 10, 1985.

Feirich, Schoen, Mager, Green & Associates, of Carbondale, for appellant.

C. E. Heiligenstein and Brad L. Badgley, both of Belleville, for appellee Mary Kaye Deason.

H. Carl Runge, Jr., of Runge & Gumbel, P.C., of Collinsville, for appellees Beth Martell and Patsie Gott.

Michael P. Casey, of Edward R. Vrdolyak, Ltd., of Chicago, for other appellees.

JUSTICE HARRISON delivered the opinion of the court:
Metropolitan Property & Liability Insurance Company (here-

inafter referred to as Metropolitan) appeals from a judgment of the circuit court of St. Clair County declaring that a policy of insurance issued by Metropolitan afforded secondary coverage in connection with a November 30, 1980, accident involving a 1975 Mercury Comet driven by Christopher Warner. The primary issue for our consideration is whether the trial court properly concluded that, under the terms of the policy issued by Metropolitan to Christopher Warner's parents, the Comet operated by Christopher Warner was a "temporary substitute automobile." Because this case involves the question of whether or not coverage exists under the terms of Metropolitan's policy, it is a proper subject for a declaratory judgment action. *Reagor v. Travelers Insurance Co.* (1980), 92 Ill. App. 3d 99, 102-03, 415 N.E.2d 512.

The policy in question provides coverage to the insured for accidents arising out of the ownership, maintenance or use of an owned or nonowned automobile. The terms "non-owned automobile" and "owned automobile" are defined in the policy as follows:

" '*[N]on-owned automobile*' means an *automobile* which is neither owned by nor furnished nor available for the regular use of either the *named insured* or any *relative*, other than a *temporary substitute automobile,* and includes a *utility trailer* while used with any such *automobile*:

\* \* \*

'*[O]wned automobile*' means

(a) a *private passenger automobile* or *utility automobile* owned by the *named insured* and described in the Declarations to which the Automobile Liability Coverage of the policy applies and for which a specific premium for such insurance is charged, or

(b) a *private passenger automobile* or *utility automobile* ownership of which is newly acquired by the *named insured,* provided (i) it replaces an *owned automobile* as defined in (a) above, or (ii) METROPOLITAN insures all *automobiles* owned by the *named insured* on the date of such acquisition and the *named insured* notifies METROPOLITAN within thirty (30) days of such acquisition of his election to make this and no other policy issued by METROPOLITAN applicable to such *automobile* and pays any additional premium required therefor, or

(c) a *temporary substitute automobile*:"

The policy defines "temporary substitute automobile" in this manner:

" '*[T]emporary substitute automobile*' means an *automobile* not owned by the *named insured* or any resident of the same

household, while temporarily used with the permission of the owner as a substitute for an *owned automobile* when withdrawn from normal use for servicing or repair or because of breakdown, loss or destruction."

The facts relevant to a determination of whether the 1975 Comet was a temporary substitute automobile are not in significant dispute. Christopher Warner spent the summer of 1980 in Ohio with his grandmother, Vera Fry. Ms. Fry, an Ohio resident, owned the 1975 Comet, which was insured by a company other than Metropolitan. During that summer, arrangements were made whereby Christopher would take the Comet with him when he returned to his parents' Cobden home at the end of the summer. It was further agreed that Christopher would return to Ohio at Christmas time and pay Vera Fry $100, after which she would have the title to the Comet transferred to Christopher and one of his parents. Christopher did in fact bring the Comet back to Cobden in August 1980, and he and his parents used it regularly. On November 30, 1980, before Christopher had paid any money to Vera Fry, and before title to the Comet had been transferred, the accident in question occurred.

On the date of the accident, Andrew Warner, Christopher's father, owned a 1973 Mercury and a 1974 Dodge pickup truck. Both of these vehicles were insured by Metropolitan. Neither was operable at the time of the accident; the Mercury had a defective transmission and the Dodge had a twisted drive shaft. Both vehicles were put back into operation shortly after the accident involving the Comet. During his deposition, Andrew Warner testified as follows:

"Q. Did you have any intention if the Comet hadn't been wrecked, did you have any intention to dispose of either of these other two cars just because you got the Comet?

A. Oh, no."

■ In ruling that Metropolitan's policy afforded secondary coverage in connection with the accident involving the 1975 Comet, the court found that Christopher Warner was "a relative operating a temporary substitute" automobile. Metropolitan contends that this conclusion is incorrect, and we are compelled to agree. Under the terms of the policy, a temporary substitute automobile is defined as one "temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair or because of breakdown, loss, or destruction." Here, the unequivocal deposition testimony of all concerned establishes that Christopher Warner's use of the Comet was not to be temporary, but regular and permanent, as it was the intention of both Vera Fry and

Christopher Warner that he would pay $100 for the car at Christmas time, and would not return it to her. Moreover, the Comet was not intended by the Warners to be a substitute for either the Mercury or the Dodge; rather, it was to be kept as a third car, and the fact that the Dodge and Mercury broke down during the Warners' use of the Comet was entirely coincidental. Under these circumstances, the "temporary substitute" provision of the policy issued by Metropolitan did not encompass Christopher Warner's use of the Comet on the date of the accident. (See *Sturgeon v. Automobile Club Inter-Insurance Exchange* (1979), 77 Ill. App. 3d 997, 1000, 397 N.E.2d 522.) This conclusion is buttressed by the holding of *Nationwide Insurance Co. v. Ervin* (1967), 87 Ill. App. 2d 432, 436-37, 231 N.E.2d 112, wherein it was recognized that a "temporary substitute" provision of the type under consideration here is to be applied to those situations where an insured automobile is withdrawn from use for a short period, and not where, as here, coverage is sought to be extended to an additional automobile for a significant length of time.

*Prudence Mutual Casualty Co. v. Sturms* (1962), 37 Ill. App. 2d 304, 185 N.E.2d 366, relied on by appellees, is not on point. *Sturms* addresses the question of whether coverage afforded on a temporary substitute automobile expires immediately upon repair of the insured's regular automobile (37 Ill. App. 2d 304, 306), and does not discuss the more fundamental issue of when a vehicle is considered to be a temporary substitute in the first place. While appellees also suggest that portions of Metropolitan's claim file show that certain Metropolitan employees believe that the policy in question afforded coverage, the trial court correctly noted in its judgment that these statements are merely opinions, and are not binding on a court in its consideration of the legal question presented. 31A C.J.S. *Evidence* sec. 272(b) (1964).

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed.

Reversed.

JONES, P.J., and KARNS, J., concur.