THE PEOPLE ex rel. VILLAGE OF BUFFALO GROVE, Plaintiff-Appellee, v. THE VILLAGE OF LONG GROVE, Defendant-Appellant.

Second District No. 2—89—0884

Opinion filed June 28, 1990.—Rehearing denied August 6, 1990.

John M. Mullen, of Libertyville, and Alan O. Amos, of Alan O. Amos, P.C., of Chicago, for appellant.

William G. Raysa, of Bloche, French & Raysa, of Oak Park, Arthur J. Schiller, of Hurley & Kallick, Ltd., of Deerfield, and Schirott & Associates, P.C., of Itasca (Richard D. Skelton, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Village of Long Grove, appeals from an order of the circuit court of Lake County granting the motion of plaintiff, Village of Buffalo Grove, for summary judgment on its complaint in *quo warranto* and denying Long Grove's motion for summary judgment. The litigation arose because the two villages annexed the same property. Long Grove argues on appeal that the Buffalo Grove annexation was invalid for a number of reasons; that the Long Grove annexation should take priority because Long Grove initiated its annexation before the Buffalo Grove annexation was initiated and the landowner's petition requesting annexation to Buffalo Grove was conditional; that Buffalo Grove was barred under the doctrine of *laches* from bringing its complaint; and that the trial court erred by denying Long Grove leave to file a counterclaim in *quo warranto*. Buffalo Grove separately appeals from the trial court's order denying its motion for sanctions against Long Grove pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) for allegedly making false statements of fact and frivolous legal arguments in its pleadings. We affirm the order granting Buffalo Grove's motion for summary judgment, reverse the order denying its motion for sanctions, and remand the cause to the circuit court for determination of an ap-

propriate sanction.

The north side of the parcel of land at issue in this case is adjacent to Long Grove. Otherwise, the parcel abuts Buffalo Grove. At the time the dispute arose between these two villages, Otis Development Company (Otis) was the beneficial owner of the land trust which held title to the northern portion of the parcel (Otis parcel) which abutted both Long Grove and Buffalo Grove. Lane Industries, Inc. (Lane), was the beneficial owner of the land trust which held title to the southern portion of the parcel (Lane parcel) which was adjacent to the Otis parcel and Buffalo Grove.

In December 1986, an Otis representative met with the Buffalo Grove village manager in order to discuss the possible annexation of the Otis parcel by Buffalo Grove. On January 7, 1987, Buffalo Grove received a petition for concept and preliminary plan review from Otis. Long Grove published a notice in the Chicago Tribune on January 17, 1987, of its intent to annex forcibly the Otis and Lane parcels pursuant to section 7—1—13 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—13), which permits annexation of unincorporated areas of 60 acres or less wholly bounded by one or more municipalities by any of the bordering municipalities.

On January 23, 1987, Otis filed a voluntary petition to have its property annexed to Buffalo Grove pursuant to section 7—1—8 of the Code (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—8), which allows municipalities to annex contiguous unincorporated regions upon the filing of a petition signed by all landowners in the area and at least 51% of the electors residing therein. Four days later, Long Grove passed an ordinance annexing both the Otis and Lane parcels. Long Grove notified Buffalo Grove of the annexation on February 16, 1987, and informed the property owners 10 days later. Long Grove passed a second ordinance annexing these parcels on March 24, 1987, because there was an error in the legal description of the property in the original ordinance.

Buffalo Grove, Otis, and the land trustee holding title to the Otis parcel filed a petition for leave to file a complaint in *quo warranto* against Long Grove on March 27, 1987. Long Grove subsequently filed objections to the petition. Lane petitioned Long Grove on April 9, 1987, for the zoning necessary to permit construction of a financial institution and other retail buildings. Long Grove granted preliminary approval for this request on April 28, 1987. Otis filed a petition for rezoning with Long Grove on May 26, 1987. Two days later, the trial court entered an order that had been agreed upon by Otis and Long Grove. The agreed order provided that Long Grove would expedite consideration of the zoning request by Otis and that this request would

not be considered a waiver or abandonment by Otis of its position in the *quo warranto* proceedings. Buffalo Grove was not a party to this agreed order.

Buffalo Grove passed an ordinance annexing the Otis parcel on June 1, 1987. On July 28, 1987, Long Grove passed an ordinance granting preliminary approval for development of the Otis parcel. The approval was conditioned upon the dismissal with prejudice by Otis and the land trustee of their petition for leave to file a complaint in *quo warranto* within 10 days of receiving final approval from Long Grove. Otis and the land trustee filed a motion for voluntary dismissal of the petition with prejudice on August 10, 1987, which was granted. That same day, Lane and the land trustee holding title to the Lane parcel were granted leave to intervene as defendants.

The trial court granted Buffalo Grove leave to file an amended petition for leave to file a complaint in *quo warranto* on August 20, 1987. Lane and Long Grove subsequently filed objections. The trial court held a hearing concerning the amended petition on August 31, 1987, and denied Buffalo Grove leave to file a complaint in *quo warranto* on the basis that the village failed to show it had a sufficient private or public interest to institute such a complaint. The trial court's order stated that Buffalo Grove had not abandoned its annexation nor was it barred under the doctrine of *laches*.

Buffalo Grove appealed the trial court's order to this court which reversed and remanded. (See *People ex rel. Village of Buffalo Grove v. Village of Long Grove* (1988), 173 Ill. App. 3d 946, *appeal denied* (1988), 122 Ill. 2d 593.) This court noted that the first party to initiate an annexation proceeding has priority over the land against all parties initiating such proceedings at a later time. (*People ex rel. Village of Buffalo Grove*, 173 Ill. App. 3d at 951.) We held that publication of notice in a newspaper pursuant to section 7—1—13 of the Code does not constitute the initiation of annexation proceedings; therefore, Long Grove's publication of notice did not give it a priority interest in the Otis and Lane parcels. (173 Ill. App. 3d 946.) Instead, the filing of the voluntary petition by Otis for annexation gave Buffalo Grove a priority interest in the Otis parcel, which was sufficient to confer standing upon the village to challenge Long Grove's subsequent annexation of the same parcel. 173 Ill. App. 3d at 952.

This court also held that Long Grove had failed to show that the public interest would be harmed if Buffalo Grove were allowed to file a *quo warranto* action and that Long Grove's argument that Buffalo Grove was barred from pursuing such a complaint by Supreme Court Rule 273 (107 Ill. 2d R. 273) because of the voluntary dismissal with

prejudice taken by Otis and the land trustee was baseless. (173 Ill. App. 3d at 952.) We further stated that since no evidence was introduced in the trial court relative to the issues of *laches* or abandonment, there was no basis to decide those factual issues on appeal. (173 Ill. App. 3d at 953.) This court reversed the denial of leave to file a complaint in *quo warranto* and remanded the matter to the trial court. Our supreme court subsequently denied Long Grove's petition for leave to appeal.

While the appeal was pending, Lane purchased the Otis parcel and constructed a banking facility on the land. The banking facility was subsequently purchased by La Salle National Bank, which is not a party to these proceedings.

The remand order from this court was filed with the clerk of the circuit court on November 15, 1988. Buffalo Grove filed its complaint in *quo warranto* on December 29, 1988. That same day, Buffalo Grove filed a motion for summary judgment which it subsequently amended. Long Grove subsequently filed a motion for summary judgment, and both villages filed responses to the motions.

Buffalo Grove alleged in its motion for summary judgment that its annexation of the Otis parcel was valid and was not abandoned or barred under the doctrine of *laches*. Buffalo Grove asserted that, since this court held on appeal that it had a priority interest in the property, its annexation was valid and Long Grove's was invalid. Buffalo Grove also asserted that the Long Grove annexation was defective for other reasons.

In its motion for summary judgment, Long Grove asserted that the Buffalo Grove annexation was defective for a number of reasons. These included the following: (1) Buffalo Grove never actually adopted its annexation ordinance; (2) the notice of proposed annexation to the fire protection district trustees contained an inaccurate legal description and was not properly served upon the trustees; (3) Buffalo Grove failed timely to file a copy of the ordinance with the Lake County clerk as required by section 7—1—8 of the Code; (4) Buffalo Grove failed to record the annexation in Cook County as required by section 7—1—40 of the Code because part of the village is located in Cook County; (5) the Otis annexation petition was contingent upon zoning and subdivision approval and did not, therefore, give Buffalo Grove a priority interest in the land; (6) Otis abandoned its annexation petition; (7) Buffalo Grove abandoned the proposed annexation; (8) the *quo warranto* complaint was barred by *laches*; and (9) the complaint was barred by the one-year statute of limitations set forth in section 7—1—46.

On August 7, 1989, the trial court issued a judgment order grant-

ing Buffalo Grove's motion for summary judgment and denying Long Grove's motion. The trial court ordered Long Grove to refrain from exercising any dominion or control over the Otis parcel.

On August 28, 1987, Buffalo Grove filed a motion for sanctions pursuant to Supreme Court Rule 137 (128 Ill. 2d R. 137) against Long Grove and its attorney, John Mullen, for raising frivolous legal and factual arguments in Long Grove's pleadings. Since the applicable pleadings were filed before August 1, 1989, the effective date of Rule 137, the trial court permitted Buffalo Grove to amend the motion and bring it pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). The trial court denied the motion on November 9, 1989. Buffalo Grove now appeals from that order and Long Grove appeals from the order granting summary judgment to Buffalo Grove.

A motion for summary judgment should be granted only if the pleadings, depositions, admissions, and affidavits on file show that no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Malesa v. Royal Harbour Management Corp.* (1989), 187 Ill. App. 3d 655, 657.) Summary judgment is a drastic means of resolving litigation and should only be granted if the right of the movant is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240; *Malesa*, 187 Ill. App. 3d at 657.) Long Grove argues that it was entitled to summary judgment or, at the very least, that material issues of fact existed precluding entry of summary judgment in favor of Buffalo Grove.

According to Long Grove, Buffalo Grove never even adopted the annexation ordinance it claims to have passed on June 1, 1987. Buffalo Grove attached a copy of the ordinance as an exhibit to its motion for summary judgment. Section 1 of the ordinance states as follows:

"That the real property legally described below be and hereby is annexed to the Village of Buffalo Grove:

That part of the Northeast Quarter of the Northeast Quarter of the Southeast Quarter of Section 30, Township 43 North, Range 11 East of the Third Principal Meridian, which lies northerly of the center line of Illinois Route No. 83, and including to the far side of any adjacent unincorporated road right-of-way, in Lake County, Illinois.

A true and correct map of said real property is attached hereto and made a part hereof as Exhibit A."

The affidavit of Buffalo Grove Village Manager William Balling, which is attached to the village's motion for summary judgment, states that the original of this exhibit is part of the official records of the village.

In its motion for summary judgment and on appeal, Long Grove points to a number of facts which allegedly support its contention that Buffalo Grove never actually adopted its annexation ordinance. Citing excerpts from the deposition testimony of Buffalo Grove Village Clerk Janet Sirabian, Long Grove states that the Buffalo Grove ordinance did not physically exist in that form as of June 1, 1987, the date of its alleged passage, and that "[t]he ordinance was prepared by persons unknown, after June 1, 1987, at some unknown time, and inserted in the Village records." Long Grove also states that the plat of annexation attached to the ordinance was not created until June 11, 1987, the village clerk did not know who attached the plat to the ordinance or when this was done, the official ordinance in the Buffalo Grove ordinance book did not have a plat attached, there was no preliminary plat in the packet of materials distributed to the Buffalo Grove board of trustees before the June 1, 1987, meeting, and the village clerk was not able to confirm that the preliminary plat was before the board at that meeting. Furthermore, according to Long Grove, the ordinance was not signed on June 1, 1987, and the version of the ordinance considered by the board on that date had been thrown away and was no longer available.

■■ Long Grove's argument that Buffalo Grove never actually passed the annexation ordinance in its present version is entirely without merit. The exhibits and deposition testimony attached to the respective motions for summary judgments and the responses thereto make it abundantly clear that on June 1, 1987, the Buffalo Grove Board of Trustees had a draft ordinance and a preliminary plat of annexation before it. The transcript from the meeting that night reflects that after a discussion about the proposed annexation of the Otis parcel, one of the trustees stated he was prepared to make a motion but wanted to ask if there were any attorney comments about the ordinance. One of Buffalo Grove's attorneys then stated as follows:

"Ordinance 87—46 — I recommend the following changes, basically in the legal description under Section 1, third line from the bottom, reading: 'all of Illinois Route number 83'—I would suggest striking the rest of that sentence and adding 'and including to the far side of any adjacent unincorporated highway' and then adding back in 'all in Lake County, Illinois.' I would also suggest to the Village Board that the plat of annexation that is before you just needs a technical direction [sic] as far as dropping that South line down to the far side of 83 on that and I would suggest that they just be done and made a part of the ordinance."

The trustee then stated: "Incorporating the recommendations of the Village Attorney, I would then move the adoption of Ordinance Number 87—46." Another trustee seconded the motion, which was then unanimously passed by the board.

Buffalo Grove contends that a certain exhibit attached to its response to Long Grove's motion for summary judgment is a copy of the draft ordinance that was before the board at the June 1, 1987, meeting, and another exhibit attached to the response is a copy of the preliminary plat of annexation that was before the board that night. At first, during her deposition, Buffalo Grove Village Clerk Janet Sirabian was not able to state whether these exhibits were copies of the draft documents that were actually before the board that night. Sirabian noted during her testimony that the meeting had taken place over 1½ years earlier. After Sirabian examined a copy of the agenda for the June 1, 1987, board meeting, however, she was able to confirm that the two exhibits were copies of the draft ordinance and preliminary plat that were before the board that night. Moreover, a review of the exhibit, alleged by Buffalo Grove to be a copy of the draft ordinance, and the final ordinance reveals they are the same, except for the amendment reflected in the transcript of the June 1, 1987, meeting. Similarly, the exhibit, alleged by Buffalo Grove to be a copy of the preliminary plat, is the same as the plat attached to the final ordinance, with the exception of the change adopted by the board as reflected in the transcript. This provides further support for Buffalo Grove's position that it duly adopted the ordinance in its final form after an amendment was made. While this was an oral amendment, there is no requirement that amendments to an ordinance prior to its passage must be reduced to writing. *Wheeling Trust & Savings Bank v. City of Highland Park* (1981), 97 Ill. App. 3d 519, 524.

The other facts discussed by Long Grove in connection with this issue are largely irrelevant. Long Grove mentions that the mayor and village clerk did not sign the ordinance on June 1, 1987, citing Sirabian's testimony that she likely signed it on June 2 or 3. Long Grove does not explain the significance of this fact, however, and we believe it is of no consequence. Long Grove also states that the official ordinance in the Buffalo Grove ordinance book contains no plat of annexation and that the ordinance had no plat attached when it was published in pamphlet form. Although the ordinance referred to the plat and adopted it as an exhibit, we deem the fact that it was not attached to the above copies of the ordinance to be insignificant, especially since the ordinance contains a legal description of the annexed territory.

■ Long Grove has further argued that Buffalo Grove's ordinance

was invalid because it unconstitutionally delegated to the surveyor, who prepared the final plat of annexation after the ordinance was purportedly passed, the power to determine the scope of the territory annexed under the ordinance. This is a patently absurd contention. The ordinance contained a legal description of the property annexed; thus, the surveyor was not given discretion to include any land in the map that he saw fit to include. Furthermore, as we have previously stated, the board had a preliminary plat before it at the June 1 meeting. It is clear from the transcript of the meeting that the board intended to annex the land included in the plat plus the adjacent unincorporated portion of Route 83 and that the board desired the final version of the plat to contain the same land as the preliminary plat, with the adjacent unincorporated portion of the Route 83 right-of-way added. Long Grove's contention that the surveyor was somehow vested with legislative authority and discretion has absolutely no basis in fact.

■ We also reject Long Grove's contention that the ordinance was impermissibly vague because it is impossible to determine what portion of the right-of-way was annexed. In support of this argument, Long Grove cites *Union National Bank & Trust Co. v. Village of New Lenox* (1987), 152 Ill. App. 3d 919, for the proposition that an ordinance is unconstitutionally vague if individuals of ordinary intelligence must guess at its meaning. (*Village of New Lenox*, 152 Ill. App. at 922.) In the case at bar, the ordinance annexes to the far side of any unincorporated road right-of-way adjacent to the Otis parcel. There is no need to guess at the meaning of the ordinance with respect to roads; any road adjacent to the parcel is annexed if it is in an unincorporated area. Long Grove's contention must therefore fail.

■ It cannot be seriously disputed from the evidence presented to the trial court that Buffalo Grove did in fact adopt the ordinance it claims to have adopted on June 1, 1987. The scenarios suggested by Long Grove of unknown persons preparing an ordinance that was never really adopted and inserting it into Buffalo Grove's records, and of surveyors having discretion vested in them by Buffalo Grove officials to determine what land will be annexed, clearly did not occur.

■ Long Grove next contends that Buffalo Grove's annexation is invalid because the notice of the proposed annexation directed to the trustees of the Long Grove Rural Fire Protection District was defective and the trustees were not properly served with the notice. Section 7—1—1 of the Code states in relevant part as follows:

"When any land proposed to be annexed is part of any Fire Protection District *** and the annexing municipality provides fire protection *** the Trustees of each District shall be notified

in writing by certified or registered mail before any court hearing or other action is taken for annexation. Such notice shall be served 10 days in advance. An affidavit that service of notice has been had as provided by this Section must be filed with the clerk of the court in which such annexation proceedings are pending or will be instituted or, when no court proceedings are involved, with the recorder for the county where such land is situated. No annexation of such land is effective unless service is had and the affidavit filed as provided in this Section." Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1.

Long Grove argues that the notice sent by Buffalo Grove to the three trustees of the Long Grove Rural Fire Protection District was defective because the legal description of the land annexed was inaccurate. The legal description in the notice specifically excluded all land used for public roads. As we have seen, the legal description in the annexation ordinance was subsequently amended to include all unincorporated roads adjacent to the Otis parcel, which, in effect, meant that portion of Route 83 adjacent to the parcel. According to Long Grove, the notice was not meaningful because of the inaccurate legal description, and the Buffalo Grove annexation was therefore invalid.

■ The legal description contained in the notice included only the Otis parcel itself and not the adjacent portion of Route 83 included in the annexation ordinance. Section 7—1—1 of the Code, however, states in part as follows:

"The new boundary shall extend to the far side of any adjacent highway and shall include all of every highway within the area annexed. *These highways shall be considered to be annexed even though not included in the legal description set forth in the petition for annexation.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1.)

Under the above provision, annexation of a parcel of land automatically results in the annexation of adjacent highways. Therefore, since the notice of proposed annexation to the fire protection district trustees contained the legal description of the Otis parcel, it sufficiently advised the trustees of the proposed annexation since the adjacent portion of Route 83 would have been automatically annexed by operation of law. We therefore deem the omission of the adjacent portion of Route 83 from the legal description in the notice to be insignificant and hold it does not invalidate the annexation.

The case relied upon by Long Grove, *People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1, is distinguishable. In that case, the annexing municipality failed to provide any notice to two of

the fire protection district trustees, and the notice to the other trustees did not advise them of the date of the city council meeting at which the annexation petition would be considered. Our supreme court noted that the intent of the notice requirement in section 7—1—1 was to enable the trustees to express objections to the annexation or otherwise represent the interests of the district. (*County of St. Clair*, 84 Ill. 2d at 8.) Trustees who received no notice or who received notices failing to specify the date upon which the proposed annexation would be considered would be unable to discharge these duties. The deficiency regarding the legal description in Buffalo Grove's notice would not have deprived the trustees of information necessary to raise objections to the annexation or otherwise represent the interests of their district, since an annexation of the area described in the notice would automatically result in annexation of adjacent roads under section 7—1—1. This deficiency does not invalidate the Buffalo Grove annexation.

Long Grove also argues that the notices were not properly served upon the trustees because, although they were sent by certified mail addressed to each of the three trustees, delivery was not restricted to the trustees. Copies of the return receipt cards reveal that Ann Roscher signed for the notice addressed to trustee Carl Roscher, the notice addressed to trustee Jack Parmenter was signed for by an N. Parmenter, and trustee Arthur Potts signed for the notice addressed to him. Buffalo Grove argues that since section 7—1—1 of the Code does not require restricted delivery, it complied with that provision by sending the notices by certified mail.

■■ This issue was recently resolved by the Appellate Court for the Fourth District in *People ex rel. City of Leland Grove v. City of Springfield* (1990), 193 Ill. App. 3d 1022. In that case, which also involved the validity of an annexation pursuant to section 7—1—8 of the Code, the court held that section 7—1—1 does not require restricted delivery of notices to fire protection district trustees. (*People ex rel. City of Leland Grove*, 193 Ill. App. 3d at 1043.) Since section 7—1—1 does not contain any language requiring restricted delivery and only requires notification in writing by certified or registered mail, we agree with the holding in *Leland Grove* and conclude restricted delivery of the notices to the trustees was not necessary. Since the evidence reveals Buffalo Grove complied with the notice provisions of section 7—1—1 and Long Grove presented no evidence to the contrary, Long Grove's argument must be rejected.

■■ According to Long Grove, the Buffalo Grove annexation is also invalid because of Buffalo Grove's failure to comply with the following requirements of section 7—1—8:

"A copy of the ordinance annexing the territory together with an accurate map of the annexed territory shall be recorded with the recorder and filed with the County Clerk within the county wherever the annexed territory is located." (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—8.)

It is undisputed that Buffalo Grove did not file a copy of the ordinance and a map of the annexed territory with the Lake County clerk's office until May 3, 1989, nearly two years after the annexation ordinance was passed.

Since the above provision requires the recording of the annexation ordinance itself, it seems apparent that the legislature contemplated that the filing would take place after the ordinance was adopted. Section 7—1—8 does not provide any time limitation for the filing of these documents. According to Long Grove, the purposes behind the above requirements are to inform the tax extension office of the county clerk as to which taxing bodies will have jurisdiction over the property and to enable the county clerk, as the election authority, to determine in which elections voters in the annexed area are permitted to vote.

■■ In the case at bar, at the time Buffalo Grove passed its annexation ordinance, Long Grove had already passed an ordinance purporting to annex the same land and was exercising jurisdiction over the property. Buffalo Grove challenged Long Grove's annexation through the *quo warranto* proceedings, but Long Grove continued to exercise dominion and control over the property during the pendency of these proceedings in the trial court. It would serve no purpose to interpret the statute as requiring Buffalo Grove to file the annexation ordinance and map of the annexed territory with the county clerk while Long Grove was still exercising control over the land. The county clerk would not have needed to know about the Buffalo Grove annexation for tax or election purposes while the property was still being treated as a part of Long Grove pending resolution of the *quo warranto* proceedings. Accordingly, we reject Long Grove's contention and conclude that Buffalo Grove was not required to file its annexation ordinance and a map of the annexed territory with the county clerk until it began to exercise control over the property.

■■ Long Grove also contends that the Buffalo Grove annexation is void because the village did not comply with section 7—1—40 of the Code (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—40). That provision states as follows:

"After any territory is annexed to or disconnected from any municipality, the chief executive officer of the municipality or of the county board, as the case may be, whenever not otherwise

provided in this Code, shall within 90 days file for recordation, in the recorder's office of the county where the territory is situated and also in the county where the annexing and divided municipalities are situated, a certified copy of the ordinance, court order or resolution of annexation or disconnection, together with an accurate map of the territory annexed or disconnected." Ill. Rev. Stat. 1987, ch. 24, par. 7—1—40.

The territory in question is in Lake County. Part of Buffalo Grove is in Lake County and a portion is in Cook County. Buffalo Grove filed a copy of the annexation ordinance and a map of the annexed territory with the Lake County recorder of deeds within 90 days of the passage of the ordinance. Buffalo Grove did not file these documents with the Cook County recorder of deeds until March 16, 1989. According to Long Grove, the failure to file these documents with the Cook County recorder of deeds within 90 days of the annexation ordinance invalidates the annexation.

■■ We disagree with Long Grove's position. Since section 7—1—40 requires the annexing municipality to file the requisite item in the recorder's office "in *the county*" where it is located (emphasis added), this provision does not specifically deal with the unique situation in the case at bar, where the annexing municipality is in two counties. It is presumed, however, that the legislature, in enacting a statute, does not intend unjust or unreasonable consequences. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363; *Cruz v. Puerto Rican Society* (1987), 154 Ill. App. 3d 72, 78.) We cannot imagine any reason why Cook County officials would need to be aware of an annexation of unincorporated Lake County territory when that property will remain a part of Lake County. It would therefore be unreasonable to declare the Buffalo Grove annexation invalid because the village did not file a certified copy of its annexation ordinance and a map of the annexed territory with the Cook County recorder of deeds within 90 days. Accordingly, we conclude that under the unique circumstances of this case, the failure of Buffalo Grove to file a certified copy of its annexation ordinance and a map of the annexed territory with the Cook County recorder of deeds within 90 days does not invalidate the annexation.

We are not persuaded otherwise by Long Grove's argument that Buffalo Grove's conduct in actually filing the above documents with the Cook County recorder of deeds on March 16, 1989, constitutes a binding admission that Buffalo Grove was required to do so under section 7—1—40. In *Deason v. Metropolitan Property & Liability Insurance Co.* (1985), 130 Ill. App. 3d 620, the court stated that even though

portions of defendant's claim file revealed that some of defendant's employees believed the insurance policy at issue afforded coverage to the insured under the circumstances of the case, the court was not bound by these opinions in its consideration of the legal question presented. (*Deason*, 130 Ill. App. 3d at 623.) The court reached the opposite conclusion in *Deason*, that the policy did not afford coverage to the insured. (130 Ill. App. 3d at 623.) Similarly, even if Buffalo Grove's conduct in filing the required documents with the Cook County recorder of deeds is evidence that the village or some of its employees felt this was required by section 7—1—40, this court is not bound by their opinion in our resolution of the legal question presented.

Furthermore, this court has held that failure to comply with section 7—1—40 will not invalidate an annexation if the party challenging the annexation had notice of it within the 90-day period. (*In re Annexation of Certain Territory to the Village of North Barrington* (1972), 8 Ill. App. 3d 50, 53.) Long Grove filed a pleading within 90 days of the passage of the Buffalo Grove annexation ordinance, which mentioned the ordinance. Under the *North Barrington* holding, even if section 7—1—40 did require filing with the Cook County recorder of deeds within 90 days of passage of the ordinance, failure to do so would not invalidate the annexation because Long Grove became aware of the Buffalo Grove ordinance during the 90-day period.

Long Grove next argues that the annexation petition filed by Otis did not give Buffalo Grove a priority interest in the Otis parcel because the petition was contingent upon certain zoning being obtained for the property and upon subdivision approval. In support of this argument, Long Grove cites evidence that Otis sought approval of a two-lot subdivision and sought rezoning of the parcel to the O and R classification contemporaneously with the requested annexation to Buffalo Grove.

 Section 7—1—8 of the Code states in relevant part as follows:

"Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality at the time of annexation and which territory has no electors residing therein, or any such territory with electors residing therein, may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory and by at least 51% of the electors residing therein shall be filed with the municipal clerk. The petition shall request annexation and shall state that no electors reside therein or that at least 51% of such electors residing therein join in the petition, whichever shall be the case, and shall be under oath. The corporate authorities of the municipality to which

annexation is sought shall then consider the question of the annexation of the described territory. A majority vote of the corporate authorities then holding office is required to annex." Ill. Rev. Stat. 1987, ch. 24, par. 7—1—8.

The Otis petition was signed under oath by a representative of the land trustee. It states that no electors reside within the territory, the territory is not within the corporate limits of any municipality, and the land is contiguous to Buffalo Grove. The petition further states as follows:

"The undersigned requests annexation of the Territory, together with that portion of any public highway adjoining the Territory which is not part of another municipality, to the Village of Buffalo Grove, Cook and Lake Counties, Illinois."

Attached to the petition was the certificate of Thomas Vucinic, executive vice-president of Otis, in which he states under oath that Otis is the sole beneficiary of the land trust holding title to the land in question. The certificate further states thusly:

"The territory is the subject of (a) an Annexation Petition to the Village of Buffalo Grove, (b) an application for rezoning to the O & R classification, and (c) an application for approval of a two-lot subdivision."

The certificate states only that the land is the subject of a rezoning application and application for subdivision, not that the annexation petition is in any way contingent upon approval of these applications. Since the Otis petition for annexation complied with the requisites of section 7—1—8, it unconditionally empowered Buffalo Grove to annex the subject property. This is true even if Otis only desired annexation in the event that its rezoning and subdivision applications were approved, since the petition did not make annexation contingent upon such approval, nor was there a separate annexation agreement with such a provision. We therefore reject Long Grove's contention that Buffalo Grove did not have priority over the subject property because of the allegedly contingent nature of the annexation petition.

Long Grove also argues that Buffalo Grove lost its priority interest in the subject property and abandoned the proposed annexation through delay in acting on the Otis annexation petition, which was filed on January 23, 1987. Buffalo Grove passed its annexation ordinance slightly more than four months later, on June 1, 1987.

In making this argument, Long Grove relies largely upon our supreme court's opinion in *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63. In *Ihde,* a petition to annex certain land to the Village of

Chicago Ridge was filed on November 23, 1957. The petition was discussed at meetings of the village board of trustees on December 3 and December 17, but was tabled at the latter meeting. The village took no further action on the petition until September 2, 1958, when the board voted to annex the property.

In the meantime, on April 14, 1958, a petition was filed to organize the Village of Palos Hills, which would include the property that was the subject of the Chicago Ridge annexation petition. An election was held on October 25, 1958, and a majority voted in favor of incorporation. Our supreme court held that the property was part of Palos Hills and that the Chicago Ridge authorities abandoned their priority jurisdiction over the property through their inaction on the annexation petition. (*Ihde*, 23 Ill. 2d at 68.) The court stated, "To decide otherwise would be to allow a municipality, by sheer inaction, to indefinitely frustrate the incorporation plans of a community." 23 Ill. 2d at 68.

In *Ihde*, there were more than nine months of inaction on the annexation petition. In the case at bar, the annexation was approved slightly more than four months after the petition was filed. Moreover, during this four-month period, Buffalo Grove did take actions relating to the annexation petition. The Buffalo Grove Plan Commission held three meetings during this period concerning the Otis plan to develop the property, the last of which was a public hearing. Buffalo Grove also hired a traffic engineer to prepare a report on the Otis development plan, which the village received on April 1, 1987.

Long Grove argues that this court should not consider the above actions in determining whether Buffalo Grove abandoned the proposed annexation but should focus only on the fact that the Buffalo Grove trustees did not vote on the petition for over four months after it was filed. We strongly disagree. A municipal government should have an opportunity to study carefully and consider the potential effect of a proposed annexation upon the municipality. This is especially true under the circumstances of the present case where the property was undeveloped and the owner planned to develop it. Under these circumstances, we agree with the trial court's finding that Buffalo Grove did not abandon the proposed annexation.

Long Grove additionally argues that Buffalo Grove lost its priority jurisdiction in the subject property because Otis abandoned its annexation petition by seeking to have Long Grove rezone the land. According to Long Grove, this conduct is inconsistent with the annexation petition and thereby constitutes abandonment of that petition. Buffalo Grove argues that it is not possible for the petitioner in a voluntary annexation pursuant to section 7—1—8 to abandon the petition. Even

assuming this is possible, we reject Long Grove's argument under the facts of this case.

In making this argument, Long Grove completely ignores the language of an order the trial court entered on May 28, 1987, pursuant to the agreement of Otis and Long Grove. This order stated that Otis would petition Long Grove for zoning changes and preliminary approval of an ordinance necessary to develop the land as planned. Long Grove agreed to consider this request as expeditiously as possible, and the parties agreed to continue the *quo warranto* proceedings pending Long Grove's determination. The order goes on to state as follows:

> "Both parties agree that this continuation and/or Otis' petitioning Long Grove shall not constitute any type of waiver of or abandonment of any position, and will not constitute delay on the part of any party to the aforementioned proceedings."

The next paragraph of the order states, "Both parties agree that Otis may further continue the aforementioned proceedings after Long Grove makes a determination based upon Otis' petition for rezoning."

In light of the agreed order, it is apparent that Otis did not waive or abandon its annexation petition with Buffalo Grove by petitioning Long Grove for rezoning and other relief. This is further illustrated by the fact that an Otis representative appeared at the Buffalo Grove board of trustees meeting on June 1, 1987. That representative, Thomas Vucinic, executive vice-president of Otis, stated at the meeting that Otis was seeking annexation to Buffalo Grove and certain zoning in order to develop the property. The Otis petition to Long Grove was merely an attempt by Otis to receive authorization to develop the property pending the outcome of the *quo warranto* proceedings; this authorization could only be obtained from Long Grove, which was then exercising control over the property. Otis did not abandon the annexation petition prior to the June 1, 1987, annexation.

Long Grove mentions certain actions taken by Otis after June 1, 1987, in support of the argument that Otis abandoned its annexation petition. As we have previously indicated, however, the property was annexed by Buffalo Grove on that date pursuant to section 7—1—8 of the Code. Since the property was already annexed, any purported abandonment of the annexation petition after June 1 is of no consequence.

Long Grove next contends that Buffalo Grove's complaint in *quo warranto* is barred under the doctrine of *laches*. *Laches* is an equitable doctrine which bars an action if, because of an unreasonable delay in bringing suit, a party has been misled or prejudiced or has taken a course of action different from that which he or she might have oth-

erwise taken. *(People ex rel. Nelson v. Village of Long Grove* (1988), 169 Ill. App. 3d 866, 874-75.) The doctrine is predicated upon the principle that courts are reluctant to grant relief to a party who has knowingly withheld assertion of a right if, in the exercise of due diligence, the right should have been asserted earlier. *(Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 940.) Buffalo Grove can hardly be accused of knowingly withholding an assertion of its rights in connection with this case. Long Grove originally passed its annexation ordinance on January 27, 1987, but then passed another ordinance on March 24, 1987, annexing the Otis and Lane parcels because of a minor defect in the first ordinance. Three days later, on March 27, 1987, Buffalo Grove filed a petition for leave to file a complaint in *quo warranto* against Long Grove.

In support of its *laches* argument, Long Grove mentions that Buffalo Grove did not actually file its *quo warranto* complaint until December 29, 1988. Long Grove ignores the fact that Buffalo Grove was required to receive leave of court to file its complaint in *quo warranto* (see Ill. Rev. Stat. 1987, ch. 110, par. 18—102). Long Grove vigorously contested Buffalo Grove's application for leave to file the complaint, and the trial court originally denied Buffalo Grove leave to do so. Buffalo Grove appealed; and this court reversed the trial court's order. Long Grove's petition for leave to appeal was denied by our supreme court. After this court issued its mandate, Buffalo Grove promptly filed its *quo warranto* complaint. Buffalo Grove diligently asserted its rights at all times during the instant proceedings.

Long Grove asserts prejudice because Buffalo Grove did not seek a stay pending appeal of the trial court order denying leave to file a complaint in *quo warranto*. According to Long Grove, a banking facility was constructed on the property while the appeal was pending; this facility now operates as the La Salle Bank of Long Grove. Long Grove asserts it was forced to expend "substantial funds and effort" in inspecting the land and issuing necessary permits. When Long Grove made these expenditures, however, it was fully aware that Buffalo Grove was continuing to contest its right to exercise jurisdiction over the subject property. Thus, Long Grove was not misled in any way, nor did the purported prejudice result from any delay by Buffalo Grove in asserting its rights. The doctrine of *laches* is clearly inapplicable.

Long Grove additionally argues that this court should reconsider its decision in the first appeal and hold that Long Grove had priority in the subject property because it published a notice of intent to annex forcibly the property pursuant to section 7—1—13 of the Code before Otis filed its voluntary petition for annexation with Buffalo

Grove. We decline to do so. In the previous appeal, we relied on the holding in *People ex rel. City of Leland Grove v. City of Springfield* (1988), 166 Ill. App. 3d 943, 948-49), with regard to this issue. In the second appeal in that case, the Appellate Court for the Fourth District refused to reconsider this holding. (*People ex rel. City of Leland Grove v. City of Springfield* (1990), 193 Ill. App. 3d 1022, 1034-35.) We likewise refuse to reconsider our earlier decision.

■■■ Finally, Long Grove argues that the trial court abused its discretion by denying it leave to file a counterclaim in *quo warranto*. Buffalo Grove correctly asserts, however, that even if the trial court's action was erroneous, Long Grove suffered no prejudice because it was permitted to raise as affirmative defenses all matters that would have been raised in the counterclaim. Long Grove argues that it did suffer prejudice because allowing leave to file a counterclaim would have shifted the burden of proof to Buffalo Grove to justify the validity of its annexation.

According to Long Grove, the burden of proof was a crucial factor with regard to the following issues: (1) whether Buffalo Grove actually adopted its annexation ordinance; (2) whether Buffalo Grove lacked priority in the subject property because the annexation petition was contingent upon zoning and subdivision approval; and (3) whether the notices to the fire protection district trustees were sufficient and properly served. We disagree. Regardless of which party bore the burden of proof, Long Grove was still required to present evidence sufficient to create a material issue of fact with regard to these or any other issues in order to defeat Buffalo Grove's motion for summary judgment. We have already ruled that Long Grove failed to do so, determining that no issue of material fact exists with regard to the numerous issues presented by Long Grove. Consequently, the trial judge acted correctly in granting Buffalo Grove's motion for summary judgment. Since Long Grove could not have been prejudiced by the trial court's order denying it leave to file a counterclaim in *quo warranto*, this order cannot form the basis for reversal.

■■■ We now turn to Buffalo Grove's appeal from the denial of its motion for sanctions against Long Grove and Long Grove's attorney, John Mullen, pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) for allegedly making frivolous legal arguments and factual contentions in various filings in the trial court. We note that Supreme Court Rule 137 (134 Ill. 2d R. 137) is not applicable because this new rule became effective August 1, 1989, and the pleadings in question were all filed before that date. See *In re Petition of Village of Kildeer to Annex Certain Territory* (1989), 191

Ill. App. 3d 713, 719 n.1 (this court did not consider effect of Rule 137 where pleadings at issue were filed prior to its effective date).

■■■ Section 2—611 requires that an attorney or a *pro se* party sign every pleading, motion, or other paper filed with the court. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) This signature constitutes a certificate that the attorney or *pro se* party has read the document, has made a reasonable inquiry into its basis, and believes that it is well grounded in fact, warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and the paper is not interposed for any improper purpose, such as harassment or delay. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611; *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 621.) If a pleading, motion, or other paper is signed in violation of this provision, "the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

■■ Buffalo Grove contends that Long Grove raised frivolous affirmative defenses in its answer to the complaint in *quo warranto* and made frivolous legal and factual contentions in its motion for summary judgment, its memorandum in support of the motion, and its reply to Buffalo Grove's response to the motion for summary judgment. The trial court's decision on a motion pursuant to section 2—611 will not be overturned absent an abuse of discretion. (*Anderson*, 177 Ill. App. 3d at 625.) Section 2—611 is virtually identical to Rule 11 of the Federal Rules of Civil Procedure; therefore, Federal cases construing Rule 11 provide guidance regarding the proper interpretation of section 2—611. (177 Ill. App. 3d at 621.) Rule 11 and section 2—611 both state that in the event of a violation, the court "shall impose" a sanction. It has therefore been held that in the event of a Rule 11 violation, the district court is required to impose a sanction. (*Frantz v. United States Powerlifting Federation* (7th Cir. 1987), 836 F.2d 1063, 1065.) We agree with this holding especially since use of the word "shall" in a statute generally connotes a mandatory obligation. (*Newkirk v. Bigard* (1985), 109 Ill. 2d 28, 33.) Therefore, if Long Grove and Mullen violated section 2—611, it would have been an abuse of discretion to deny the motion for sanctions.

Buffalo Grove has not argued that any of the filings in question were entirely frivolous, and it is apparent that each one contains some legitimate contentions. This raises the issue of whether sanctions

should be imposed pursuant to section 2—611 if a pleading, motion, or other paper contains some frivolous contentions but some legitimate contentions as well. Since there is no Illinois case resolving this issue, we shall look to Federal authority. In this regard, we find the holdings and reasoning of several Seventh Circuit cases to be persuasive. That court has stated as follows:

"Rule 11 applies to all statements in papers it covers. Each claim must have sufficient support; each must be investigated and researched before filing." *Frantz v. United States Powerlifting Federation* (7th Cir. 1987), 836 F.2d 1063, 1067.

The Seventh Circuit has therefore held that Rule 11 does not preclude a district court from imposing sanctions for frivolous conduct even if some of the party's claims are not frivolous. (*Teamsters Local No. 579 v. B & M Transit, Inc.* (7th Cir. 1989), 882 F.2d 274, 281.) The court noted in that case that two legitimate claims had been raised, but then stated:

"These two legitimate issues were surrounded by a flood of extraneous arguments that unduly delayed proceedings and wasted the court's time." (*Teamsters Local No. 579*, 882 F.2d at 281.)

In several other cases where one or more legitimate claims were made but frivolous claims were made as well, the Seventh Circuit has upheld sanctions awards or determined that sanctions should be imposed. (See, *e.g., Hays v. Sony Corp. of America* (7th Cir. 1988), 847 F.2d 412, 417; *Frantz v. United States Powerlifting Federation* (7th Cir. 1987), 836 F.2d 1063, 1067; *Hill v. Norfolk & Western Ry. Co.* (7th Cir. 1987), 814 F.2d 1192, 1200.) We therefore conclude that the presence of some legitimate claims in Long Grove's trial court filings would not have precluded an award of sanctions pursuant to section 2—611.

We conclude that Long Grove violated section 2—611 by asserting in its motion for summary judgment, the supporting memorandum and the reply to Buffalo Grove's response to the motion, that Otis abandoned the proposed annexation to Buffalo Grove by petitioning Long Grove on May 26, 1987, for zoning changes and preliminary approval of an ordinance allowing development of the property. This argument ignores the fact that the trial court entered an order on May 28, 1987, that had been agreed upon by Otis and Long Grove and signed by Long Grove's attorney, John Mullen. This order specifically states that Otis' actions in petitioning Long Grove for the zoning changes and the ordinance permitting development will not constitute a waiver or abandonment of Otis' position in the *quo warranto* proceedings.

It is evident from the above order that Otis only petitioned Long Grove for the zoning changes and ordinance because Long Grove exercised control over the property pending the outcome of this litigation, and Otis wished to develop the land as soon as possible. We would point out that there is no statutory or case law stating that an annexation petitioner may abandon annexation proceedings. Even if such a theory was recognized, it would clearly be inapplicable under the facts of this case in light of the agreed order between Otis and Long Grove. We conclude that the trial court abused its discretion by determining that Long Grove did not violate section 2—611 by advancing this argument.

The trial court did not abuse its discretion, however, by determining that the other arguments advanced by Long Grove did not violate section 2—611. While Buffalo Grove maintains that Long Grove frivolously relitigated several issues purportedly decided by this court in the last appeal, the trial court could have reasonably concluded that Long Grove advanced these arguments in an effort to preserve these issues for possible further appeal. Although we have rejected several of the arguments for which Buffalo Grove sought sanctions in the trial court, we conclude there was some basis in fact or law for each of them, with the exception of the contention that Otis abandoned its annexation petition. We remand this case to the trial court for consideration of an appropriate sanction for raising this frivolous contention in violation of section 2—611.

For the above reasons, the judgment of the circuit court of Lake County is affirmed in part, reversed in part, and remanded.

Affirmed in part; reversed in part and remanded.

REINHARD and INGLIS, JJ., concur.